THE STRABO.

(Circuit Court of Appeals, Second Circuit. January 5, 1900.)

No. 75.

ADMIRALTY—MARITIME TORT.
Admiralty has jurisdiction of an action for injury to one descending from a ship to a wharf by means of the ladder provided therefor, caused by the ladder being negligently left unfastened to the rail of the vessel, it having slipped along the rail while he was descending, and he being thrown upon the wharf, and injured there.

Appeal from the District Court of the United States for the Eastern District of New York.

For opinion in district court, see 90 Fed. 110.

Edw. L. Owen, for appellant.
Wm. C. Bucher, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The libelant was, at the time of the injury which was complained of, a longshoreman at work in loading the steamship Strabo, as she was lying at one of the docks in the city of Brooklyn. The libel averred:

"That the master of the Strabo furnished for the libelant and his fellow workmen a ladder as the sole means of access to and egress from the steamship, which was by the master placed with one end resting upon the rail of the Strabo, and one end upon the dock; that said ladder was negligently and carelessly left unfastened in any manner to the rail of the Strabo, and left wholly unsecured; that on or about the 12th day of March, 1897, while the libelant was about to leave the Strabo by means of this ladder, and while the same was resting upon said rail of the steamship, the libelant was by reason of the falling of the ladder, and wholly because of the careless and negligent manner in which it had been left, thrown violently to the ground, and severely and permanently injured."

These allegations were true, and, as a result of the insecurity of the ladder upon the ship, it slid along the rail after the libelant had descended two or three steps; he was thrown off; he struck upon the dock; was picked up as he was lying, with one leg over the stringpiece, and the other leg upon the dock; and was subsequently taken to the hospital, where it was found that the urethra had been ruptured by the external violence to which he had been subjected, and a painful operation was performed. The district court for the Eastern district of New York entered a decree in favor of the libelant for the sum of $2,500, and costs. He testified that his shoulder struck against the side of the ship before he fell upon the dock, but this was not averred in the libel, and the record does not give reliable information upon the subject. The important question in the case is that of the jurisdiction of a court of admiralty over a tort caused by the negligence of the master upon navigable water, in regard to the security of the ladder upon the ship, the accident commencing upon the ship, and the known injurious consequences having been suffered by the fall upon the land.

The decisions in this country are all founded upon The Plymouth, 3 Wall. 20, 18 L. Ed. 125, which was a case of fire originating in the negligence of the persons in charge of a steam propeller anchored at a wharf in the Chicago river, whereby the vessel took fire, and the flames communicated to valuable buildings and property upon the wharf. The owners of the burned property brought a libel in admiralty against the owners of the steamer. The supreme court was of opinion that the case was outside the jurisdiction of admiralty over marine torts, because, to give a court of admiralty jurisdiction, "the wrong and injury complained of must have been committed wholly upon the high seas or navigable waters, or, at least, the substance and consummation of the same must have taken place upon these waters." This case, and those of similar character, are where the negligence happens on navigable water, and the injurious consequences are communicated to, or extend to, property on shore, which always had been

severed from the ship; but the language, if taken literally, declares that admiralty jurisdiction does not exist unless the substantial consummation of the injury or the substantial damage occurs on navigable water, and therefore if a passenger on board a steamship should, through the negligence of the owners, stumble on the ship upon a defective gangplank, and be precipitated upon the wharf, the injury would not be a maritime tort. The language employed in the Plymouth decision, and which was applicable to the circumstances of that case, does not justify such a conclusion. In this case it is highly probable that the libelant sustained some damage from nervous shock while precipitated through the air, and before he fell upon the wharf. A person of sensitive nervous organization would, without doubt, receive such an injury. The injury commenced when, by the slipping of the ladder, the libelant was thrown into the air. Whether or not this throw was damnum absque injuria cannot be told, but it is true, as the district judge said, "that the whole wrongful agency was put in motion and took effect on the ship, and thereby the libelant was hurled from his position on the ship, and before he reached the dock was subjected to conditions inevitably resulting in physical injury, wherever he finally struck." The cause of action originated and the injury had commenced on the ship, the consummation somewhere being inevitable. It is not of vital importance to the admiralty jurisdiction whether the injury culminated on the stringpiece of the wharf or in the water.

In The H. S. Pickands, 42 Fed. (D. C.) 239, a case much relied upon by the appellant, the negligence was the removal by the master of the vessel of a cleat on the wharf which protected against slipping the ladder which connected the wharf with the vessel. A workman on the vessel attempted to go on shore by the aid of the ladder, which slipped at the bottom, in consequence of the icy condition of the wharf, whereby he was thrown upon the wharf and severely injured. The district and the circuit courts held that an admiralty court had no jurisdiction. The negligence was the removal of the cleat on the wharf. The ladder slipped, and the serious part of the damage occurred on the wharf. The only thing which is known to have happened on navigable water was that the master, while on the ship, shifted the ladder away from the cleat. These facts distinguish the case from the one at bar, and make it more plainly a tort by the master upon the land. The decree is affirmed, with interest and with costs.