## THE OCRACOKE.

(District Court, E. D. Virginia. January 17, 1908.)

1. SHIPPING—CARRIAGE OF PASSENGERS—INJURY TO PASSENGER—IMPROPER LANDING PLACE FROM VESSEL.

Libelant took passage on respondent steamer for Newport News, at which port the boat stopped in passing. On reaching there the boat went alongside a pier, the gangway railing was removed, and a deck hand stepped out on the pier and made a line fast. Libelant followed four or five other passengers to the gangway, and they each stepped out on the pier. Seeing the hand removing the line from the cleat, libelant asked him if he was not going to put out the gang plank, and, being told he was not, libelant attempted to step up on the pier, but lost his balance and fell, receiving serious injury between the vessel and the pier. It appeared that the vessel stopped at another pier at Newport News, which was the usual passenger landing, but libelant did not know and was not informed of such fact. *Held*, that the vessel was negligent in impliedly inviting passengers to land at the pier, and in failing to instruct or assist them or to provide proper facilities; that libelant under the facts shown was not chargeable with contributory negligence which would preclude his recovery of damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 538–544, 551.]

2. WITNESSES—IMPEACHING TESTIMONY—PRIOR STATEMENTS.

Testimony as to a statement made by a person injured immediately after the injury and while he is in severe pain, blaming himself in a general way for the accident, is not entitled to great weight, as impeaching testimony in respect to the facts which is apparently thoroughly reliable.

In Admiralty. Libel to recover damages for personal injuries.

Thorp & Bowden, for libelant.

Loyall, Taylor & White, for respondent.

WADDILL, District Judge. The steamer Ocracoke is operated by the Old Dominion Steamship Company, in its local service between the city of Norfolk, via Newport News, and Smithfield, Va., between which places it makes a round trip daily. On the early morning of March 8, 1907, the libelant took passage on this steamer at Norfolk for Newport News. At the latter place, the steamer stops at Pier No. 6 of the Chesapeake & Ohio Railway Company, upon signal to discharge and receive freight, and then proceeds some distance further up the harbor to Pier A, the regular Old Dominion pier, which it seems is the regular passenger landing. The libelant was making his first trip on this steamer, and did not know of the two places of stopping at Newport News. En route from Norfolk, he observed several passengers, one of whom he knew, but he did not join any of them. Soon after leaving Norfolk, the libelant purchased his ticket through the stewardess, being informed that there was no purser on board, and shortly before arriving at Pier 6 in Newport News the captain of the steamer collected his ticket. Upon approaching Pier No. 6 libelant observed four or five of the persons above referred to proceed to the main deck, apparently to leave the vessel at Newport News, and he followed them for the same purpose. As the steamer reached the pier, a colored deck hand, having removed the gangway railing, jumped from the boat

to the wharf to make the steamer fast, there being no person on the pier for that purpose, and about the same time four of the passengers stepped off on the wharf, without waiting for the gang board to be put out, and, as they did so, the steamer sprang off somewhat from the pier, and upon again touching the wharf a fifth passenger likewise stepped off. The libelant waited with the steamer thus in position for the gang board to be put out, when he observed the deck hand apparently in the act of removing the line which held the boat to the pier from the cleat on the pier, and he called to him to know if he was not going to put out the gang board, and received the reply that he was not; and libelant then supposing the steamer was leaving for Smithfield, attempted, as other passengers had done, to step to the wharf, but lost his balance, was thrown upon the wharf, as he thinks upon his back, and fell with his body partly on the wharf and partly off, his head being between the steamer and the pier, and resting against or on the guard rail of the ship, as a result of which he received painful and serious injury. This suit is to recover for the injuries sustained, and the respondent denies his right of recovery, because of the alleged contributory negligence of the libelant. The facts are few, and the conflict as to them not very great—certainly as to material matters. The libelant is positive that he was informed by the deck hand that the gang board would not be put out, while the latter says no such inquiry was made; and the libelant is likewise positive that the steamer had come to a standstill at the time he stepped on the pier, whereas the evidence of the ship is to the effect that, although the engines were reversed and had been moving backward a little while, the steamer was still moving slightly forward, and proceeded possibly from 5 to 20 feet. The court saw and heard the witnesses; the libelant being a witness of character and intelligence, who testified with the utmost candor and fairness, and the truthfulness of whose statements and the sincerity of his motives and purposes in all he stated cannot be questioned. His statement as to the gang board should not only be accepted, as against that of the deck hand who claimed not to have heard him make the inquiry respecting the same, because of the manifest truthfulness of what he says, but, moreover, the circumstances strongly bear him out. Had he not been waiting for the gang board, he could and would have stepped off as did the other passengers on the two previous occasions, but he waited, called for the same, and only endeavored to alight when it became apparent, as he supposed, that he was to be carried away from Newport News and on to Smithfield. No warning was given him not to alight; no information given him that the steamer was to stop at any other place in Newport News, either by the captain at the time his ticket was taken up, or this sole representative of the company at the place where passengers were being allowed to disembark from the steamer, and hence he should not be disentitled to recover, because of doing what was apparently a safe thing to do, as five other passengers had just done, in the presence of the officers and employés of the steamer, without remonstrance. The fact is not disputed that this deck hand was in the act of removing his line from the cleat, as claimed by the libelant, at the time he stepped off, nor is it denied that the gangway rail had been removed apparently for passengers to disembark,

and that the other persons mentioned by the libelant had gotten off, and that this deck hand was the only employé of the company on the occasion in question, either on the pier or at or near the gangway, to facilitate either the landing of the boat or to assist and give instructions to passengers wishing to disembark therefrom. It is claimed that ordinarily there was some employé on the pier to receive and make fast the rope from the ship, but on this occasion no one was present. Likewise, the libelant is borne out in his statement that the boat had come to a standstill at the time he stepped off, by the circumstances which corroborate him. He is positive in his statement; he was manifestly watchful and careful in what he was doing, as he was waiting to alight, and had seen other passengers alight without the gang board, and he then called for the gang plank before attempting to get off. The fact that the deck hand had gotten to the pier, and four passengers subsequently disembarked, and the fifth later, during which time confessedly the rope had been round the cleat on the pier, quite conclusively establishes that the boat was at a standstill, and, indeed, it is claimed by the respondent that it only moved from 5 to 20 feet. The libelant evidently lost his balance in stepping from the deck of the boat upon the pier, which was slightly elevated, most likely by the oscillation of the steamer in the water, and if there was any forward movement of the steamer, that had then come to a standstill, it was doubtless caused by the removal of the rope from the cleat, which was being made as the libelant stepped to the pier.

The conclusion reached by the court upon this whole evidence is that the libelant is entitled to recover for the injuries sustained; that, as a passenger upon this steamer, he had the right to assume under the circumstances that this was the place of landing at Newport News; and that the respondent utterly failed to take due and proper care to provide for passengers landing from the steamer, by the employment of proper employés to render such services, either in the matter of informing passengers as to the place of landing or making a safe landing, and, on the contrary, by the course of conduct of its employés, and the sole representative that was then engaged in the double purpose of making fast the ship and landing passengers, invited and caused the libelant to alight as other passengers had done immediately preceding. Respondent suggests the deafness of the libelant, as also weakness in one of his legs, which interfered with his getting ashore. An examination of the libelant, certainly by one who heard him testify and observed his movements, would readily dispel the force of either of these contentions, as there was apparently no deafness, and while there was a slight stiffness in one of his knees there was no such condition as materially affected him in stepping from the deck of the steamer to the pier on the occasion in question, and certainly none such as would tend in any respect to relieve the respondent from liability it may have incurred by reason of placing him in the position of having to make the step. Respondent also introduced a number of witnesses to prove the statement of libelant immediately after the accident as to the cause thereof, and in which it is alleged he blamed himself therefor. The statements of all these witnesses are entirely consistent with what the libelant says, namely, that if he made any such statement in his then

condition of extreme suffering, that he doubtless did blame himself, as he does now, for having stepped ashore, as it would have been far better to have gone to Smithfield, and lost that day, and indeed many others, rather than to have sustained the injury he did, and involve the risk of his life. These statements are not entitled to great weight, especially when they are introduced to impeach the evidence of thoroughly reliable witnesses. The Supreme Court of the United States in Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270, stated to some.extent its view of this class of testimony, and the court can but feel that employés of corporations frequently weaken, instead of strengthen, their cases in the vigilance displayed in procuring evidence of this character, at a time when the humanities of the case would appear to call for sympathy for the injured persons, rather than to commit them to statements that would deprive them of what might be their just dues.

The damages to be awarded is as usual difficult to estimate. Libelant was most seriously hurt, and suffered greatly, and his head is somewhat permanently disfigured. Why he was not killed is a miracle. His head was terribly lacerated and torn; his life greatly endangered. He supposed that his brains were oozing out. To every one his skull appeared to be crushed, and, fortunately, it was not, as the doctor after a careful examination discovered. The flesh wounds were most painful and serious. He was confined to his house some three weeks, and from his business about a month; but having the constant care of competent physicians, he has apparently recovered from permanent injury, though he still suffers occasionally with his head. He is a man of large business affairs, was detained a month from his work, had incurred doctors' bills of some $185, lost certain of his effects—clothing and apparel, including his gold eyeglasses—$20 in currency from his person, and a valuable overcoat, and, besides, suffered great pain and anxiety, and may yet suffer as a consequence thereof, on account of all of which the court thinks an award of $1,700 would be reasonable, and a decree may be entered therefor.