## THE MONTROSE.

(Circuit Court of Appeals, Second Circuit. March 13, 1911.)

### Nos. 202–205.

SHIPPING (§ 84*)—LIABILITY OF VESSEL—INJURY TO STEVEDORES.

    Libelants, four in number, who were longshoremen employed in loading a ship, fell into the water and were injured by the breaking of the companion ladder furnished by the ship for their use while they were passing together from the ship to the wharf. The ladder was of wood, and both side pieces broke in the middle. No fault or latent defect in the wood appeared. *Held*, that the inference from the facts was that it originally was, or had become, insufficient for the use for which it was furnished, and that the ship was liable for the injuries.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 349–351; Dec. Dig. § 84.*]

Appeal from the District Court of the United States for the Eastern District of New York.

Suits in admiralty by Daniel Sullivan, Martin McNulty, John Murray, and Joseph Mulcahy, respectively, against the steamship Montrose; Robert Glegg, claimant. Decrees for libelants, and claimant appeals. Affirmed.

See, also, 178 Fed. 495.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Convers & Kirlin (J. Parker Kirlin and Russell T. Mount, of counsel), for appellant.

Robert Stewart (R. G. Barclay, of counsel), for appellee Mulcahy.

George W. Bristol (Woolsey Carmalt, on the brief), for appellees Sullivan, McNulty, and Murray.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge.   March 9, 1908, at noon, the four libelants while passing from the deck of the steamer Montrose to the wharf by way of a companionway ladder, were thrown into the water through the breaking of the ladder.   They were longshoremen, servants of the stevedore employed to load the steamer, and the ladder was provided by the owners of the steamer for their use.   It was three years old, of teakwood, about 24 feet long, with a hand rope passing through four stanchions clamped on the outer side.   The sides were 1⅝ inches thick by 6½ wide, and the treads 1¼ thick by 8 inches wide.   It lay fore and aft, between the side of the vessel and the wharf, and above the wharf.

After the accident, being no longer fit for its original purpose, the master cut it up to make smaller ladders, and naturally cut off the ragged ends at the break.   These were kept in the ship some time, but eventually lost, and at the trial only a piece of one of the smaller ladders was produced to show the kind, size, and character of the wood. An examination of the broken parts would probably have thrown light upon the case, and the libelants contend that because of their absence all presumptions should be against the claimant as contra spoliatorem. But, regrettable as the circumstance is, we cannot regard the master as a spoliator.   What he did in disposing of the remains of the ladder was entirely in accordance with good shipkeeping, and it is not strange that he was somewhat careless about the broken ends, in view of the fact that the libelants seemed to have sustained nothing more than a ducking, and did not make claim for some months afterwards.   Moreover, his testimony as to the appearance of the broken parts was very frank.   A latent defect would have been a good defense to the ship; but he conceded that there was no indication of any in the wood.

As the ladder broke in the middle, we are quite satisfied that every one on it at the time must have been thrown into the water, and that there were not more than the four libelants who were in the water. The shipowner furnished the ladder for the use of the longshoremen, among others.   At the time of the accident it lay alongside at an angle of between 20 and 30 degrees from the wharf, in a position allowing nearly the maximum strain at the center.   The shipowner should have expected that, out of gangs of longshoremen consisting of not less than six, hurrying to and from their work, at least four might use the ladder at the same time and in close proximity to each other.   As it broke on each side in the center between two treads, and it is admitted that no fault or latent defect was disclosed, the inference is that it originally was or had become insufficient for the use which the owners should reasonably have expected it would receive.   The decrees are affirmed, with interest and costs.