### THE HOKKAI MARU.

(Circuit Court of Appeals, Ninth Circuit. September 8, 1919.)

No. 3244.

1. MASTER AND SERVANT ☞120 — SHIP LIABLE FOR INJURY TO WATCHMAN USING ROPE LADDER.

A ship *held* liable for injury to a watchman employed by its agent, who while attempting to board the vessel from the pier by means of a Jacob's ladder, by direction of an officer, fell and was injured by reason of the moving of the vessel and the negligence of the crew in drawing up the ladder.

2. MASTER AND SERVANT ☞200—WATCHMAN ON SHIP NOT FELLOW SERVANT OF OFFICERS AND CREW.

A watchman, employed to guard a ship lying at a pier, *held* not a fellow servant of the officers or crew.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit in admiralty by W. C. Hubbard against the steamship Hokkai Maru; Mitsui & Co., Limited, claimant. Decree for libelant, and claimant appeals. Affirmed.

The appellee was employed by the steamship Hokkai Maru as night watchman; the ship being at the time docked at the Port Commission dock, South Cove, Seattle, Wash. He was so employed through one Davis, who acted in that behalf for the ship. The latter, it appears from the record, was in the regular employ of agents of other ships in the matter of securing such watchmen, but at times rendered like service for other agents, as in the instant case. The duty of such watchman was to see that none of the Japanese on board escaped from the ship to enter this country illegally. When employed for the purpose stated, the appellee was told to go to the dock to which the Hokkai Maru was tied, to relieve a watchman then on the ship, called Richie, but whose true name, it appears from the evidence, was Kemnitz. When the appellee reached the dock, the ship was about to be moved, by means of tugs, to the other side of the dock; it having at the time no steam.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It was not loaded, and therefore stood high in the water; the only then means of getting off or going aboard being the ordinary work ladder, called Jacob's ladder, made of rope, and hanging loosely down the side of the ship, and being in this instance about 30 feet long, with 8 rungs. It was by means of that ladder that the appellee undertook to go aboard the ship, and being an old man, and the ladder being very greasy, he was unable to reach the deck of the ship, and in the effort of its officers and crew to haul the ladder up with the appellee on it, the latter fell into the water, from which he was later rescued, suffering the injuries and losses for which he libeled the vessel and its owner.

Daniel B. Trefethen and Howard Findley, both of Seattle, Wash., for appellants.

M. L. Longfellow and John L. Fitzpatrick, both of Seattle, Wash., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] The appellee alleged in the libel his employment as night watchman, and his endeavor to board the ship by means of the ladder that has been mentioned, and further alleged in substance that when he had ascended the ladder about 10 feet, the agents and officers of the ship moved it without signal or warning of any kind, the libelant continuing to ascend the ladder while demanding that the officers and agents of the ship "come to his assistance by returning said ship to the dock, or giving him a rope or net, sending a man down the ladder, or lashing this libelant to the ladder," which they failed to do, but "carelessly and negligently drew up the ladder until this libelant was near the top of the ship, when an agent and employé of said ship carelessly and negligently broke the hold of this libelant and caused him to fall into the water," a distance of about 40 feet; that the libelant was boarding the ship for the purpose of performing his duties as night watchman, and was directed by the officers and agents of the ship to do so by going up the ladder, which swung to and fro, having no attachment at the lower end, and there being no weight fixed to it; that the ladder was the only means provided by the ship for getting aboard, and that the libelant's fall and the length of time he remained in the water before being rescued resulted in certain alleged specified injuries and in certain alleged losses of specified personal property, aggregating $10,000.

It is contended on the part of the appellant that Davis was an independent contractor, for whom the libelant was working, and that the latter had no contractual relations with the ship or its owner. We are quite familiar with the well-known rule that one who has contracted with a competent independent contractor to perform a lawful service for him cannot be held liable for negligence committed by such contractor or his servants in prosecuting the work he had agreed to do. But that rule has no application to the present case, for we do not understand, even from the testimony so much relied upon by the appellant, that Davis contracted to watch the ship, or in any

way bound himself to answer in damages for any negligence or carelessness on the part of any watchman he should send to the ship; he being, as we think the evidence clearly shows, the mere instrumentality through which the ship procured the watchmen it needed, and for whose services it, through its agents, paid.

There is very substantial conflict in the evidence regarding the circumstances under which the libelant got upon the ladder in his endeavor to go upon the ship, and as to whether it was his duty to go on the latter, as well as in respect to the exact cause of his falling from the ladder into the water. The testimony in behalf of the libelant is to the effect that after he reached the dock several persons came down the ladder from the ship, including the watchman called Richie, whom he was to relieve, and that after Richie came down he (libelant) was told by an officer of the ship to go up the ladder onto the ship, which he undertook to do by stepping on the ladder from the dock, after which the ship began to move, with the results that have been stated.

Among the witnesses for the claimant, who testified to the effect that the libelant got on the ladder after the ship began to move from the dock, was an inspector of United States customs, a man named Edwards, who was questioned, and answered, among other things, as follows:

"Q. Now, I will ask you if you saw Mr. Hubbard just prior to that accident, and, if you did, state the circumstances under which you saw him, and what was said and done? A. I was detained at the dock that night, because I had to go back after supper to work. As I came back—I had charge —I walked alongside where the boat laid, and as I came around the Hokkai Maru, they were casting off the lines. Q. Had they cast off the forward lines? A. They had cast off the forward lines, and there was only one way of getting aboard, and that was by the Jacob's ladder, over the side. Q. Was the boat drifting out then? A. Yes; she was out probably a good step from the dock. Q. About three or four or six feet? A. Three or four feet further than they usually had, when they got to get aboard the Jacob's ladder. Q. Where was Hubbard? A. He was on the dock. Q. What was said and done? A. He says, 'How am I going to get aboard the boat; she is pulling out?' I said, 'I would not get aboard of her, because she is going to the opposite side of the dock and tie up again.' And he said, well, he would stay with his boat; that he didn't know where she was going. I told him they told me they were going to put the boat on the other side, and I was to be around there when they loaded, and I knew she would be around there. Q. You did not see him any more? A. I did not see him any more."

There was other testimony in behalf of the claimant tending to show that the ship was moving away from the dock when the libelant undertook to board her; but we think, from the evidence taken as a whole, that the conclusion of the court below that the libelant's version of the fact is correct is not only far more reasonable, but that it is also conclusive upon us, since the evidence on the point is in irreconcilable conflict. We add, however, that if it be conceded to be possible for an old man to step three or four feet from a dock to the rung of a rope ladder hanging loosely down the side of a ship, while the latter is in motion, it is altogether unreasonable to conclude that such a man in his senses would undertake to do so.

The contention of the appellant that the case is not within the jurisdiction of an admiralty court is, in our opinion, without any merit. The Plymouth, 3 Wall. 20, 18 L. Ed. 125; The Strabo, 98 Fed. 998, 39 C. C. A. 375.

[2] Equally clear is it, we think, that the libelant cannot be properly regarded as a fellow servant of any of the officers or crew of the ship, for the reason, if for no other, that they were not engaged in the same general employment. See Sansol v. Compagnie Générale Transatlantique (C. C.) 101 Fed. 390; The Terrier (D. C.) 73 Fed. 265; 26 Cyc. 1360.

A careful examination of the evidence satisfies us that the court below was right in its conclusion that the moving of the ship after the libelant had been directed by one of its officers to go upon the ladder, and before he had ascended it, was, under all of the circumstances of the case, negligence on the part of the ship, which negligence was added to by those of its officers and crew in the handling of the ladder in the endeavor to hoist the libelant; and finding, from the record, that the evidence justified the amount of the award to the libelant, the judgment is affirmed.