## HOOF v. PACIFIC AMERICAN FISHERIES.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1922.)

No. 3590.

**1. Master and servant ☞351—Common-law right of action superseded by Compensation Act.**

The Workmen's Compensation Act of Washington *held* to take away the common-law right of action of an employé for a personal injury, whether such injury occurred on land or on the water.

**2. Maritime liens ☞9—Services of watchman on domestic vessel in port not maritime.**

By the weight of authority the services rendered by a watchman in charge of a domestic vessel lying at her wharf are not maritime, and do not give the right to a maritime lien.

**3. Admiralty ☞20—Jurisdiction of tort depends on locality, and not on maritime character of contract.**

In order to support jurisdiction in admiralty in the case of tort resulting in personal injury, it is not necessary that the injured person shall have had a maritime contract with the owner or with the vessel; the jurisdiction depending entirely on locality.

**4. Admiralty ☞20—Action for injury to watchman held within admiralty jurisdiction.**

A court of admiralty *held* to have jurisdiction of a suit in personam for injury to a watchman employed by respondent on a vessel, which had been launched, but was not completed, which injury was alleged to have been caused by the negligence of respondent.

**5. Admiralty ☞6—Vessel launched, though not completed, is a "ship," and within the maritime jurisdiction.**

When a vessel has been launched and named, though not completed, she is a "ship," for the purpose of determining the jurisdiction of a court of admiralty in an action for a tort committed thereon.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ship.]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action at law by Emil Hoof against the Pacific American Fisheries. Judgment for defendant, and plaintiff brings error. Reversed.

Thos. R. Waters and Peringer & Thomas, all of Bellingham, Wash., for plaintiff in error.

Kerr & McCord and Stephen V. Carey, all of Seattle, Wash., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The plaintiff in his complaint in the court below pleaded diversity of citizenship of the parties, and alleged that on April 16, 1919, he was employed by the defendant in the capacity of watchman on a vessel belonging to the defendant, "but not yet completed," bearing the name of Cleo; that while he was making the rounds as watchman, in attempting to descend from the forward bridge deck to the forward main deck by means of steps which had

been prepared and placed there by the defendant for that purpose, the steps being insufficiently secured in place, and not protected by hand-rails, slipped and fell to the floor of the main deck, thereby throwing the plaintiff to said deck, causing him serious personal injury. A de-murrer to the complaint was sustained on the ground that the court below had no jurisdiction of the cause of action. The ground of the ruling appears to have been that the Workmen's Compensation Act had abolished the plaintiff's common-law cause of action, and that there was no jurisdiction in admiralty for the reason that the services of a watchman in no way connected with the navigation of a vessel are non-maritime, and that an uncompleted ship is not an instrumentality of commerce and navigation, although afloat in navigable water.

[1] It seems clear that the Workmen's Compensation Act of the state of Washington (Laws 1911, p. 345) has taken away from the plaintiff his common-law right of action. He alleged in his complaint that his claim was first presented to the Industrial Insurance Commis-sion under the Workmen's Compensation Act, and that he was re-fused relief because at the time of his injury he was employed upon navigable waters. In Stertz v. Industrial Insurance Comm., 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B, 354, it was held that the Work-men's Compensation Act ends the jurisdiction of the state courts as to all phases of the master's liability to his servant for injuries resulting from fortuitous events, regardless of fault on the part of either, and remits the determination thereof to the Industrial Insurance Commis-sion. In Shaughnessy v. Northland Steamship Co., 94 Wash. 325, 162 Pac. 546, Ann. Cas. 1918B, 655, it was held that the Workmen's Compensation Act has no application to an employé engaged in un-loading a ship lying at a dock in navigable waters, for the reason that a state has no power to abolish remedies afforded by the maritime laws of the United States.

The plaintiff contends that the rule of those decisions has been modified by Puget Sound B. & D. Co. v. Industrial Ins. Com., 105 Wash. 272, 177 Pac. 788, the purport of which decision is said to be that persons who are not working upon the land are without the pur-view of the Compensation Act. We do not so understand the decision. The action in that case was brought by the Dredging Company against the Industrial Insurance Commission to enjoin the collection of pre-miums for the plaintiff's workmen. It appears that the Dredging Company had three classes of employés—those who worked continu-ously on the dredge, those who worked wholly on the land, and those who worked partly upon the dredge and partly upon the land. The court held that for the first class the plaintiff should pay no premiums, for the reason that the dredge was a vessel subject to admiralty juris-diction. There was no intention to hold that there remains in the state of Washington a class of personal injuries to employés which comes neither within the Workmen's Compensation Act nor within the juris-diction of admiralty. To hold that a dredge is a vessel subject to ad-miralty jurisdiction is in accordance with the weight of authority. McMaster v. One Dredge (D. C.) 95 Fed. 832; Bowers Hydraulic D. Co. v. Federal Contracting Co. (D. C.) 148 Fed. 290, affirmed in 153

Fed. 870, 83 C. C. A. 52; The Mackinaw, 165 Fed. 351; North American Dredging Co. v. Pacific Mail S. S. Co., 185 Fed. 698, 107 C. C. A. 620; The Steam Dredge No. 6 (D. C.) 222 Fed. 576; The Bart Tully, 251 Fed. 856, 164 C. C. A. 72.

[2] There remains the question whether the complaint alleges a cause of action in personam in admiralty, a question of which it may be said, as was oberved in The Blackheath, 195 U. S. 361, 25 Sup. Ct. 46, 49 L. Ed. 236: "The precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history." Whether or not services rendered by a watchman in charge of a domestic vessel lying at her wharf are maritime services and can be made the basis of a maritime lien is a question upon which the courts have differed. In The Hattie Thomas (D. C.) 59 Fed. 297, Judge Townsend said it is a "difficult question" and one concerning which there has been much conflict of authority. That the services are maritime in their nature has been held in The Ship Harriet, Fed. Cas. No. 6097, Olc. 229; The Erinagh (D. C.) 7 Fed. 231; The Maggie P. (D. C.) 32 Fed. 300; The George T. Kemp. Fed. Cas. No. 5341, 2 Lowell, 477; The Navis (D. C.) 196 Fed. 843. But the weight of authority is otherwise. The America (D. C.) 56 Fed. 1021; The Hattie Thomas (D. C.) 59 Fed. 297; The Sirius (D. C.) 65 Fed. 226; The James T. Furber (D. C.) 157 Fed. 124; The Fortuna (D. C.) 206 Fed. 573; The Sinaloa (D. C.) 209 Fed. 287. But it does not follow from the fact that his services are not maritime that a watchman may not have his remedy in personam in admiralty for tort committed by the owner while he is so employed. In Campbell v. Hackfeld, 125 Fed. 696, 62 C. C. A. 274, this court held that to bring a case within the jurisdiction of a court of admiralty maritime relations of some sort must exist, and while recognizing the rule that in cases of tort locality remains the test of admiralty jurisdiction we said:

"But this is by no means saying that a tort or injury in no way connected with any vessel, or its owner, officers, or crew, although occurring in such a place or territory, is for that reason within the jurisdiction of the admiralty."

[3, 4] In the present case the injury to the plaintiff was connected with a vessel in maritime waters, and occurred while the plaintiff was performing services for the vessel. In order to support jurisdiction in admiralty in the case of tort resulting in personal injury, it is not necessary that the injured person shall have had a maritime contract with the owner or with the vessel. In Leathers v. Blessing, 105 U. S. 626, 26 L. Ed. 1192, jurisdiction was entertained in admiralty for personal injuries sustained by the libelant in going upon a vessel moored to the wharf; he having no connection with the vessel or any business upon her or about her except that he was expecting a consignment of goods by her, and went on board to ascertain whether it had arrived. The court held that the facts made the case one of invitation to the libelant to go on board in the transaction of business with the master and officers of the vessel, and that the relation was such as to create a duty on the part of the master and his co-owner, to see that the libelant was not injured by negligence of the master. In Phila., Wil.

279 F.—24

& Balt. R. Co. v. Phil. & Havre de Grace Steam Towboat Co., 23 How. 209, 215, 16 L. Ed. 433, it was said:

"The jurisdiction of courts of admiralty, in matters of contract, depends upon the nature and character of the contract; but in torts it depends entirely on locality."

Said the court in The Plymouth, 3 Wall. 20, 36, 18 L. Ed. 125:

"Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance."

What was there said was repeated in Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 60, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157. In The Hokkai Maru, 260 Fed. 569, 171 C. C. A. 353, this court held a ship liable for injury to a watchman employed by its agent who, while attempting to board the vessel from a pier by means of a Jacob's ladder, by direction of an officer, fell and was injured by reason of the moving of the vessel and the negligence of the crew. In Consolidation Coastwise Co. v. Conley, 250 Fed. 679, 163 C. C. A. 25, the court held that a stevedore who was not an employé of a barge, but was employed by an independent contractor engaged to discharge the cargo of the barge, must be deemed to have gone upon the barge at the invitation of the owner, and that the owner was liable for the injury which he sustained in attempting to cross a hatch cover thereon. In Rohde v. Grant Smith Porter Co. (D. C.) 259 Fed. 304, it was held that the libelant might recover in personam against the owner for personal injuries sustained while he was doing carpentry work on a vessel which was lying in navigable waters.

In Anderson v. The E. B. Ward, Jr. (C. C.) 38 Fed. 44, a vessel was held liable for injuries to one who fell into an open hatchway. Objection was made to the jurisdiction on the ground that the cause of action was not maritime, that the libelant had no contract or connection with the vessel of any nature, and that the accident occurred in port. The court, following Leathers v. Blessing, held that, where a steamship was in the common berth at a wharf previously occupied by another, the latter being moored outside, with no means of communication with the wharf other than across the deck of the inner vessel, the latter's negligence in permitting her deck to be in a condition unsafe for passage over it to the outside vessel rendered an injury occurring therefrom a marine tort within the admiralty jurisdiction. In The Calista Hawes (D. C.) 14 Fed. 493, Judge Benedict held a vessel liable for injury to an assistant United States weigher, whose duty it was to keep tally of the vessel's cargo while it was discharged, and who was injured by the negligent act of those who were discharging the cargo. In The Rheola (C. C.) 19 Fed. 926, Judge Wallace held a vessel liable for injuries sustained through defective appliances by a stevedore employed by another, who had contracted to unload the vessel, although there was no privity of contract between the shipowners and the libelant.

[5] It is contended that the tort alleged in the complaint is not a maritime tort, for the reason that the vessel was incomplete, was not in commission, and was not an instrumentality of commerce and naviga-

tion. The vessel had been launched and was afloat in navigable water. To what extent she remained unfinished does not appear from the complaint. The allegations in that respect are that she was not yet completed, and that she had not been put into actual commission. Taking the allegations, as we must, most strongly against the pleader, we assume that a substantial amount of work remained to be done to complete the vessel.

In Tucker v. Alexandroff, 183 U. S. 424, 438, 22 Sup. Ct. 195, 201 (46 L. Ed. 264), Mr. Justice Brown, for the court, said:

"A ship is born when she is launched, and lives so long as her identity is preserved. Prior to her launching she is a mere congeries of wood and iron—an ordinary piece of personal property—as distinctly a land structure as a house, and subject only to mechanics' liens created by state law and enforceable in the state courts. In the baptism of launching she receives her name, and from the moment her keel touches the water she is transformed, and becomes a subject of admiralty jurisdiction. She acquires a personality of her own; becomes competent to contract, and is. individually liable for her obligations, upon which she may sue in the name of her owner, and be sued in her own name. * * * She is capable, too, of committing a tort, and is responsible in damages therefor. * * * So sharply is the line drawn between a vessel upon the stocks and a vessel in the water that the former can never be made liable in admiralty, either in rem against herself, or in personam against her owners, upon contracts or for torts, while if, in. taking the water during the process of launching, she escapes from the control of those about her, shoots across the stream and injures another vessel, she is liable to a suit in rem for damages."

Again, in The Raithmoor, 241 U. S. 166, 176, 36 Sup. Ct. 514, 516 (60 L. Ed. 937), the court said:

"It is to be remembered that as soon as a vessel is launched, although still incomplete, it is subject to the admiralty jurisdiction."

In that case it was held that admiralty had jurisdiction over an incompleted structure in navigable waters, to be used when completed as a governmental aid to navigation, and that its location and purpose were controlling from the time it was begun. The defendant relies upon the recent decision of the Supreme Court in The Francis McDonald, 254 U. S. 242, 41 Sup. Ct. 65, 65 L. Ed. 245, where it was held that a contract for the construction of a ship or for supplying materials for construction is nonmaritime, and that the fact that an unfinished ship had been launched before the libelant undertook a contract to complete it did not make the contract a maritime contract, citing a line of cases in which it had been held that contracts to furnish materials, machinery, or work in the original construction of a ship are not maritime in their nature, and do not give rise to maritime liens. The court observed that Tucker v. Alexandroff must be read in the light of the particular matter under consideration—detention of a foreign seaman—and that in announcing the conclusion that, after a vessel was launched, she was a ship within the meaning of the treaty there under consideration, there was no intention to lay down any definite rule with relation to contracts for ship construction.

We do not think it was the intention of the court in the McDonald Case to overrule what was said in Tucker v. Alexandroff or The Raithmoor. We think that in dealing with the question of maritime tort

the doctrine announced in the Alexandroff Case is still authority for our guidance. Alexandroff had been sent from Russia as a member of a crew to take possession of a war vessel then under construction at Philadelphia for the Russian government. It was claimed that he was a deserter, and the controversy brought under consideration the treaty of the United States with the Russian government, which provided that consuls and vice consuls, etc., of the latter government, should have authority to require the assistance of the local authorities for the search, arrest, detention, and imprisonment of deserters from ships of war and merchant vessels of their country. The decision of the court was that the vessel which had been launched and was lying in the water, and had not yet received her armament, was a Russian ship of war within the meaning of the treaty. The ruling that the launched vessel was a ship carries with it by necessary inference the conclusion that when launched, an uncompleted ship is a subject of admiralty jurisdiction, and is answerable for torts. The very recent decision of the Supreme Court in Grant Smith Porter Ship Co. v. Herman F. Rhode, 257 U. S. ——, 42 Sup. Ct. 157, 66 L. Ed. ——, we accept as authority for the proposition that the jurisdiction in admiralty extends to the case.

The judgment is reversed, and the cause is remanded for further proceedings in accordance with the foregoing opinion.