#### M. & J. TRACY, Inc., v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 25, 1924.)

#### No. 189.

Appeal from the District Court of the United States for the Eastern District of New York.

Affirming decree 297 Fed. 670.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

PER CURIAM. Decree affirmed.

---

### THE ATNA.

(District Court, W. D. Washington, S. D. March 31, 1924.)

#### No. 4272.

1. Admiralty ⬳20—Whether a tort is maritime depends on place where injury is received.

When a person is injured in passing over a ladder from a vessel to the shore, the admiralty has jurisdiction if he is injured, that is, wronged, before he is entirely free from the ship and has safely reached the shore, but, if passing from the shore to the ship, the admiralty has not jurisdiction until he has reached the ship and is entirely separated from the shore.

2. Admiralty ⬳1—Jurisdiction shown prima facie will be retained until status is clearly changed.

Where a libel makes a case which is prima facie within the admiralty jurisdiction, such jurisdiction is not lost until the established relation or status is clearly lost or changed.

In Admiralty. Suit by Carl Waara against the steamer Atna, the Norwegian Africa & Australia Line, claimant, with John Gommerson as intervening libelant. On exceptions to intervening libel. Overruled.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

297 F.—43

J. M. Phillips, of Aberdeen, Wash., for libelant.

Bogle, Merritt & Bogle, of Seattle, Wash., for respondent.

James R. Gates, of Aberdeen, Wash., for intervening libelant.

CUSHMAN, District Judge. It is alleged:

"That intervening libelant was a stevedore in the employ of a stevedoring firm engaged in loading and discharging the respondent vessel.

" * * * That the booms, cables, wenches and tackle used in handling cargo, belonged to the ship and were temporarily, for the purpose of handling the cargo, placed under the control of the stevedore company.

"That the officers of the ship, and members of the ship's crew, were hired and employed by the owners and operators of the ship and worked in obedience to the orders of the captain; that the members of the ship's crew placed, alongside said vessel, a wooden ladder or companionway for the purpose of furnishing a means of ingress and egress to and from the vessel, for intervening libelant and members of the longshoring crew and those who had work and whose duty it was to be upon said vessel; that said ladder was owned by said ship; that the stevedore company was being paid a sum certain to load and discharge said vessel and was doing said work in its own way and was accountable only to the ship for the results obtained; that a few minutes after 5 o'clock on said day, when intervening libelant had completed his day's work, he started to leave the ship by means of said ladder, which was the only gangway furnished by the ship for said purpose; that when intervening libelant and at least two other longshoremen were on the ladder to the dock, descending, the ladder broke on account of its defective condition, and intervening libelant fell some 25 feet into the navigable water of the Chehalis river; that the ladder broke beneath intervening libelant; that he clung to the ladder's rungs after the break; that the portion of the ladder to which he clung descended with him; that in falling the ladder became wedged between the ship's side and one of the fender logs hereinafter described, or some other firm object; that intervening libelant is unable to state the exact nature of the object against which the base of the ladder struck; that the sudden impact against the ladder caused libelant's injuries hereinafter mentioned; that the fender log above mentioned lay lengthwise with the dock on either side of the row of upright supporting piers, and said fender logs lying approximately the length of the dock were attached together by means of crosspieces and in such a manner that the fender logs rose and fell with the tide up and down against the upright piers; that said fender log was an aid to navigation and placed in said position solely as a protection to ocean going vessels when alongside said dock; that intervening libelant was completely submerged in the water.

"That the officers of said ship knew that intervening libelant, and other members of the longshoring gang, would use said ladder to go on board and off board the vessel to and from their work; that the said officers of said vessel placed said ladder at said place for such purpose; that the ship and her officers and agents were negligent in this, to wit, that the ship's officers and agents failed and neglected to fasten in any manner the top of the ladder to the ship's rail by means of a rope or other device, contrary to the well-established custom and practice among seafaring men in said locality at said time, which custom and practice existed in said locality and should have been known by said officers and agents of the ship; that said ladder was defective and unseaworthy and unfit to be used for such purpose; that said defect was open and apparent; that the upright supporting portion of the ladder, in the region of where same broke, prior to placing same in use for said men, contained cracks and decay and knotholes which were open and apparent; that the officers of said ship knew, or in the exercise of ordinary care should have known, that said ladder was weak and defective and unsuitable for the purpose for which it was furnished."

The question is, this being a suit in rem, whether the court has jurisdiction as a court of admiralty.

Claimant cites in support of its exception to the intervening libel: Grant Smith-Porter Ship Co. v. Rohde, 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008; The Plymouth, 3 Wall. 20, 18 L. Ed. 125; The H. S. Pickands (D. C.) 42 Fed. 239; Netherlands Am. Steam Nav. Co. v. Gallagher (C. C. A.) 282 Fed. 171; Hughes v. Alaska S. S. Co. (D. C.) 287 Fed. 427; Southern Pac. Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; The Haxby (D. C.) 95 Fed. 170; Rundell v. Campaigne Generale Transatlantique, 100 Fed. 657, 40 C. C. A. 625; Hoof v. Pac. Am. Fisheries (9 C. C. A.) 279 Fed. 367; Pac. Am. Fisheries v. Hoof (9 C. C. A.) 291 Fed. 306; Atl. Transport Co. of West Virginia v. Imbroveck, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157; Lermond's Case, 122 Me. 319, 119 Atl. 864; The Albion (D. C.) 123 Fed. 189; Swayne & Hoyt, Inc., v. Barsch (C. C. A. 9) 226 Fed. 581, 141 C. C. A. 337; Gowanus Storage Co. v. U. S. Shipping Board Emergency Fleet Corp. (D. C.) 271 Fed. 528; Herman v. Port Blakely Mill Co. (D. C.) 69 Fed. 646; The Mary Garrett (D. C.) 63 Fed. 1009; State Ind. Ins. Com. v. Nordenholt, 259 U. S. 263, 42 Sup. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; Port of New York Steve. Co. v. Castagna (C. C. A.) 280 Fed. 618; Martin v. West, 222 U. S. 191, 32 Sup. Ct. 42, 56 L. Ed. 159, 36 L. R. A. (N. S.) 592; The City of Elwood, 1924 A. M. C. 241; The Oskaloosa, 1923 A. M. C. 44; Johnson v. Chicago & P. Elevator, 119 U. S. 388, 7 Sup. Ct. 254, 30 L. Ed. 447; The Windrush-The Buenos Aires (D. C.) 286 Fed. 251; The Poznan (D. C.) 276 Fed. 418.

Libelant cites in opposition the following additional cases: The Ocracoke (D. C.) 159 Fed. 552; Riley v. Vallejo Ferry Co. (D. C.) 173 Fed. 331; The Montrose (D. C.) 178 Fed. 495; The Hokkai Maru (C. C. A. 9) 260 Fed. 569, 171 C. C. A. 353; The Strabo, 98 Fed. 998, 39 C. C. A. 375; The Anglo-Patagonian, 235 Fed. 92, 148 C. C. A. 586; The Robert W. Parsons, 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73; The Blackheath (D. C.) 122 Fed. 112; The Raithmoor, 241 U. S. 166, 36 Sup. Ct. 514, 60 L. Ed. 937; United States v. North German Lloyd (D. C.) 239 Fed. 587; Evans v. Western Timber & Logging Co. (D. C.) 201 Fed. 461; The Mackinaw (D. C. Or.) 165 Fed. 351; Great Lakes D. & D. Co. v. Kierejewski, etc., 261 U. S. 479, 43 Sup. Ct. 418, 67 L. Ed. 756; The Montrose, 186 Fed. 156, 108 C. C. A. 337.

The present is truly a border-line case, and, in so far as applicable to its controlling features, it is difficult to harmonize upon principle all the foregoing cases. This will be seen by comparing the decisions in The Strabo, 98 Fed. 998, 39 C. C. A. 375, and the H. S. Pickands (D. C.) 42 Fed. 239.

[1, 2] Cases such as the present are to be viewed not unlike other cases involving a change of status. The jurisdiction is not lost until the established relation or status is clearly lost or changed. When a person is injured in passing over a ladder connecting a vessel with the shore, the admiralty has jurisdiction if he is injured, that is, wronged, before he is entirely free from the ship and has safely reached the shore. If he is passing from the shore to the ship, the admiralty has not jurisdiction until he has reached the ship, and is entirely separated

from the shore. The Hokkai Maru (9 C. C. A.) 260 Fed. 569, 171 C. C. A. 353, and Swayne & Hoyt, Inc., v. Barsch (9 C. C. A.) 226 Fed. 581, 141 C. C. A. 337; The Strabo, 98 Fed. 998, 39 C. C. A. 375; The Albion (D. C.) 123 Fed. 189.

No other question involved has been heard or considered.

Exceptions overruled.