**James H. BIBLE, Plaintiff,**

v.

**CHEVRON OIL COMPANY, the California Company Division, & American Chain and Cable Company, Inc., Wright Hoist Division, Defendants.**

**Civ. A. No. 68–382.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 30, 1969.

John R. Martzell, Kenneth W. Manuel, New Orleans, La., for plaintiff.

Henry D. McNamara, Jr., of Mouton, Roy Carmouche & Hailey, Metairie, La., for defendant, American Chain & Cable Co., Inc.

RUBIN, District Judge:

On August 17, 1966, James Bible, an employee of Houma Welders, Inc., was working as a welder's helper on a fixed platform located in the Gulf of Mexico about one mile offshore from Lafourche Parish, Louisiana. An opening in the deck of the platform near its southeast corner was being decked and that part of the structure was being reinforced with ten inch steel beams to support a compressor. Bible was standing near the opening, holding one end of a rope; the other end was tied to a beam being lowered by him and his co-workers into place in the opening. It is contended that a mechanical device, known as a come-along, which was being used in lowering the beam, failed, the beam fell, and Bible was jerked by the rope. He collided with a co-worker, and both fell through the opening. Bible fell about fifty feet from the platform deck to the water below. Before striking the water he struck a metal brace that formed a part of the platform's substructure. The brace projected from the platform into the water but the portion that the plaintiff struck was not submerged. As a result of the fall Bible suffered fractures of his left leg and hip area.

Suit was filed against Chevron Oil Company, the owner of the platform, and American Chain and Cable Company, Inc., (American Chain), the manufacturer of the come-along, for damages based on maritime tort, on February 26, 1968. American Chain has filed a motion to dismiss and for summary judgment on the basis that the suit is a non-maritime diversity suit controlled entirely by Louisiana law and the one-year Louisiana prescriptive period, LSA–C.C. Art. 3536, applies; hence the action must be dismissed.

■ The accident happened about one mile from the Louisiana coast in Louisiana waters; therefore the provisions of the Submerged Lands Act relative to the Outer Continental Shelf do not apply. 43 U.S.C. §§ 1301, 1331, 1333(a).[1] Compare, Pure Oil Company v. Snipes, 5 Cir. 1961, 293 F.2d 60 where a similar accident occurred on a fixed platform located 65 miles off the Louisiana coast and the court found the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, 1333(a), applicable.

The plaintiff contends that admiralty rules, including the doctrine of laches, apply here because "the accident and injury culminated in the navigable waters of the Gulf of Mexico." But this statement misapprehends the criterion to be applied.

■ A tort is maritime and therefore falls within the admiralty jurisdiction only if "the substance and consummation of the [injury that gave rise to the cause of action took] place upon [navigable water]." The Plymouth, 1865, 70 U.S. (3 Wall.) 20, 35, 18 L.Ed. 125. "[T]he whole, or at least the substantial cause of action, arising out of the wrong, must be complete within the

---

1. The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331(a), defines the Outer Continental Shelf as the area of submerged lands lying beyond the seaward boundaries of the adjacent states.

locality upon which the jurisdiction depends—on the high seas or navigable waters." 70 U.S. (3 Wall.) at 36. This is the general rule applied to injuries involving several jurisdictions reportèd by the Restatement of Conflicts, § 377, which states:

"The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place."

Explaining this rule the Note to it, Restatement of Conflicts, page 455, observes:

"Except in the case of harm from poison, when a person sustains bodily harm, the place of wrong is the place where the harmful force takes effect upon the body.

"Such a force is first set in motion by some human being. It is quite immaterial in what state he set the force in motion. It must alone or in cooperation with other forces harm the body of another. The person harmed may thereafter go into another state and die from the injury or suffer other loss therefrom. The place where this last event happens is also immaterial. The question is only where did the force impinge upon his body." [2]

This appears to be a correct statement of the rule usually applied in tort law. It is apparently the rule applied to a land-water accident in the Supreme Court decision in T. Smith & Son v. Taylor, 1928, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520. That case concerned a decedent who was standing on a piece of equipment resting solely on the wharf, an extension of land, when he was struck by a sling loaded with cargo, and knocked into the water. Some time later he was found dead. Suit was brought under the Louisiana Compensation Law exclusively for the death that occurred in the water; no claim was made for the injuries sustained on the wharf. The Court held that the cause of action arose on land and state law was applicable,[3] saying:

2. Section 379a of the Second Restatement retains the "last event" rule of the original Restatement, stating: "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties as to the particular issue involved, in which event the law of the latter state will govern." Tentative Draft No. 8, April 24, 1964. Comment (a) to Section 379a declares that "'personal injury' may involve either physical harm or mental disturbance, as fright and shock, resulting from physical harm or from threatened physical harm or other injury to oneself or to another." *Id.* The "place of injury" is defined by Comment (b) as "The place * * * where the force set in motion by the actor first takes effect on the person." *Id.*

Even if the recent trend reflected by the Second Restatement and by recent cases, see, *e. g.*, the discussion in Leflar, Choice-Influencing Considerations in Conflicts Law, 1966, 41 N.Y.U.L.Rev. 267; Leflar, More on Choice-Influencing Considerations, 1966, 54 Cal.L.Rev. 1584; and Note, 1967, 42 Notre Dame Lawyer 577, were employed and we looked to the jurisdiction having the most significant

contacts with this injury, rather than to the place of the tort, we would reach the same result. The most significant relationship to the issues involved are with the platform and Louisiana, the adjacent state, rather than with the admiralty jurisdiction; the place of final aggravation of the injuries was the Gulf of Mexico, a purely fortuitous site. The Supreme Court, in Rodrigue v. Aetna Casualty and Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, noted the important relationship "between the men working on these stationary islands and the adjacent shore to which they commute to visit their families * * *." 89 S.Ct. at 1842.

3. Compare, Nacirema Operating Co. v. Johnson, 1969, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (December 9, 1969). In *Nacirema* longshoremen were transferring cargo from railroad cars on piers to ships' cranes for transfer to the ships when they were struck by swinging cargo being hoisted by the ship's crane and were thrown against the side of the railroad car and crushed or knocked to the pier. The Supreme Court held that the injuries did not occur upon navigable water, hence they were not compensable under the Longshoremen's and Harbor Workers'

"[Plaintiff in error] argues that as no claim was made for injuries sustained while deceased was on land and as the suit was solely for death that occurred in the river, the case is exclusively within the admiralty jurisdiction. But this is a partial view that cannot be sustained. The blow by the sling was what gave rise to the cause of action. It was given and took effect while deceased was upon the land. It was the sole, immediate and proximate cause of his death. The G. R. Booth, 171 U.S. 450, 460, 19 S.Ct. 9, 43 L.Ed. 234. The substance and consummation of the occurrence which gave rise to the cause of action took place on land. The Plymouth, supra." 276 U.S. at 182, 48 S.Ct. at 229.

Conversely, when a disembarking passenger fell from a gang plank to a dock, the passenger's cause of action was held to be maritime. The Admiral Peoples, 1935, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633. The cause of action, that case said, "arose from the breach of duty owing to her while she was still on the ship and using its facility for disembarking." 295 U.S. at 652, 55 S.Ct. at 887.

The "place of harmful force on the body" rule had earlier been applied in The Strabo, E.D.N.Y.1898, 90 F. 110, affirmed, 2 Cir. 1900, 98 F. 998, where a ladder that was not properly secured to a ship's rail fell and libelant was thrown to the dock as he attempted to leave the vessel. Admiralty jurisdiction was sustained, the court observing:

"If a seaman, by the master's neglect, should fall overboard, would this court entertain jurisdiction if the seaman fell in the water, and decline jurisdiction if he fell on the dock or other land? The inception of a cause of action is not usually defined by such a rule. * * * [T]he act or omission which puts in force the primary hurtful agency does not constitute the cause of action; for, until such force takes effect injuriously upon the person * * * of some one, there is a mere naked breach of duty, and the case is damnum absque injuria; but, where the breach of duty puts in motion agencies that come in actual injurious collision with the person * * * of another to whom the duty was due, the cause of action at once arises, and the locality of the tort is fixed, however much the physical injury may be aggravated by subsequent occurrences, which may be regarded as continuations of the original wrongful act, and its immediate operation, and in a sense as incidents thereof." 90 F. at 113.[4] In affirming the District Court in that case the Circuit Court of Appeals said:

"The cause of action originated and the injury had commenced on the ship, the consummation somewhere being inevitable. It is not of vital importance to the admiralty jurisdiction whether the injury culminated on the stringpiece of the wharf or in the water." 98 F. at 1000.

A similar principle was applied by the Fifth Circuit many years ago in L'Hote v. Crowell, 5 Cir. 1931, 54 F.2d 212, when a longshoreman who had been working on a wharf putting bales in a sling climbed into the sling on the last load to board the vessel and was fatally injured when the

---

Compensation Act, 33 U.S.C. §§ 901–950. The Court hinted, however, that since a vessel was involved the Extension of Admiralty Act of 1948, 46 U.S.C. § 740, discussed at note 6 infra, might provide admiralty jurisdiction under the rationale of Gutierrez v. Waterman S. S. Corp., 1962, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297.

See also, Rodrigue v. Aetna Casualty and Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, involving injuries on offshore platforms located on the Outer Continental Shelf where the Court found admiralty tort jurisdiction lacking and the Death on the High Seas Act, 46 U.S.C. §§ 761–768, inapplicable.

4. "[A] physical injury was caused to the libelant by his fall, which was increased by his striking the dock." 90 F. at 110. "[I]f the libelant received any physical injury before striking the dock, although the sum of his injuries was not complete until he did reach the dock, this court has jurisdiction." Id. at 114.

sling hit the rail or side of the ship knocking him off the load back onto the wharf. The court held that he had finished his work on the wharf and was under the control of an instrumentality of the ship. Similarly, when a longshoreman working on the deck of a vessel was struck by a swinging hoist and thrown onto a wharf, the cause of action was held to be maritime. Minnie v. Port Huron Terminal Co., 1935, 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631.

The Restatement rule is cited and applied in Jordan v. States Marine Corporation of Delaware, 9 Cir. 1958, 257 F.2d 232. There the wife of a seaman brought suit against the shipowner for a maritime injury to her husband, claiming loss of consortium and sexual intercourse. Her husband had signed a release but she had not, and she set forth her right under the law of her domicile, Oregon, to recover for loss of consortium. Her contention was, " 'the injury *she* sustained was in the State of Oregon, the place of the parties' marital domicile, which granted her a substantive right to recover for interference with her consortium by third parties.' " 257 F.2d at 233 (Emphasis in original).

Mrs. Jordan cited and relied on the Restatement. But the court construed the "last event" to mean "the last act on board the vessel causing the injury to the husband." 257 F.2d at 233.

■ Thus analyzed it is clear that the tort that serves as a basis for Bible's claim was a platform tort, governed by the law of the platform. This was Louisiana law because the platform was in Louisiana waters. 43 U.S.C. § 1331.

Dicta in an airliner crash case, Wilson v. Transocean Airlines, N.D.Cal.1954, 121 F.Supp. 85, 92, support the plaintiff's thesis that this was an admiralty tort.[5] But the application of admiralty rules to aircraft accidents on the high seas is supported by more fundamental concepts elaborated upon in Weinstein v. Eastern Airlines, Inc., 3 Cir. 1963, 316 F.2d 758:

> "Today, aircraft have become a major instrument of travel and commerce over and across these same waters. When an aircraft crashes into navigable waters, the dangers to persons and property are much the same as those arising out of the sinking of a ship or a collision between two vessels." 316 F.2d at 763.

Since Louisiana law is applicable here for the reasons already stated, we need not examine the question suggested by counsel, and thoroughly briefed, whether the decision in Rodrigue v. Aetna Casualty & Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 is applicable. Nor need we examine the subsidiary question whether, if the *Rodrigue* decision were applicable, it should be applied prospectively only due to alleged reliance on prior jurisprudence, such as Pure Oil Company v. Snipes, supra, holding maritime principles applicable to accidents similar to the one involved in this case when they occur on the Continental Shelf beyond the state's seaward boundary.[6]

American Chain's motion to dismiss the plaintiff's action as prescribed and for summary judgment is therefore granted.

5. *See also*, Fireman's Fund Ins. Co. v. City of Monterey, N.D.Cal.1925, 6 F.2d 893 and The City of Lincoln, S.D.N.Y. 1885, 25 F. 835 involving water damage to cargo resulting from the collapse of wharves. Compare, Pure Oil Company v. Snipes, 5 Cir. 1961, 293 F.2d 60, 64–66.

6. Nor need we consider the Extension of Admiralty Act, 46 U.S.C. § 740, which extends admiralty jurisdiction to instances of personal injury caused "by a vessel on navigable water, notwithstanding that such * * * injury be done or consummated on land." The Act, by its own terms, applies only to vessels. See Thompson v. Crown Petroleum Corp., 5 Cir. 1969, 418 F.2d 239 (November 3, 1969), and the cases cited therein for the settled rule that, as a matter of law, stationary, fixed platforms are not vessels.