# THE RAITHMOOR.[1]

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 24.  Argued January 26, 1916.—Decided May 1, 1916.

In determining whether the admiralty has jurisdiction over an incom-
   pleted structure in navigable waters to be used when completed as
   a governmental aid to navigation, its location and purpose are con-
   trolling from the time it was begun.
The jurisdiction that admiralty has over an incompleted structure in
   course of construction extends to that which is a mere incident to
   such construction.
The admiralty has jurisdiction of a libel *in rem* against a vessel for
   damages caused by its colliding with an incompleted beacon in
   course of construction in, and surrounded by, navigable waters and
   which when completed is to be used solely as a governmental aid to
   navigation.
186 Fed. Rep. 849, reversed in part.

THE facts, which involve the jurisdiction in admiralty
of the District Court of a libel *in rem* against a vessel
for damages caused by its colliding with an incompleted
beacon in navigable water, are stated in the opinion.

*Mr. H. Alan Dawson,* with whom *Mr. Edward J. Min-
gey* and *Mr. J. Rodman Paul* were on the brief, for ap-
pellant:

The analogy to an unfinished ship supports the juris-
diction in the case. *Ferry* v. *Bers,* 20 How. 393; *Edwards* v.
*Elliott,* 21 Wall. 532, 553; *Graham* v. *Morton Transp. Co.,*
203 U. S. 577, distinguished, and see *Phila. W. W. & B.*

---

[1] Docket title: *Latta & Terry Construction Company* v. *British
Steamship "Raithmoor," William Evans, Master and Claimant.*

R. R. v. *Towboat Co.*, 23 How. 209, 215; *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52, 59; *Martin* v. *West*, 222 U. S. 191.

A ship becomes such when she is launched, notwithstanding she is still unfinished. *Tucker* v. *Alexandroff*, 183 U. S. 424. This case is governed by *The Blackheath*, 193 U. S. 361, and the general principles therein announced and applied, and see *The Arkansas*, 17 Fed. Rep. 383, 387, as interpreted by *Cleveland R. R.* v. *Cleveland S. S. Co.*, 208 U. S. 316; *Ex parte Phenix Ins. Co.*, 118 U. S. 610, and *Johnson* v. *Elevator Co.*, 119 U. S. 388.

Courts of Admiralty have taken jurisdiction for damages to the following structures for the reason that they were located in navigable waters and did not concern commerce on land. A beacon. *The Blackheath*, 195 U. S. 361.

Submarine cables resting on the bottom of navigable water, notwithstanding connection of the ends with the shore. *Postal Tel. Co.* v. *Ross*, 221 Fed. Rep. 105; *The William H. Bailey*, 100 Fed. Rep. 115; *S. C.*, 111 Fed. Rep. 1006; *The Anita Berwing*, 107 Fed. Rep. 721; *The City of Richmond*, 43 Fed. Rep. 85; *S. C.*, affirmed, 59 Fed. Rep. 365; *Stephens* v. *West. Un. Tele. Co.*, 8 Ben. 502.

Temporary platform structure resting on girders sunk into the bottom of navigable waters. *The Senator Rice*, 122 Fed. Rep. 331.

Injury to a person on a pontoon fastened to the shore by a cable and used as a landing in connection with a ferry. *The Mackinaw*, 165 Fed. Rep. 351.

Floating bath-house moored to the shore by poles and chains. *The M. R. Brazos*, 10 Fed. Cas. No. 9898.

Floating drydock moored to a wharf. *Simpson* v. *The Ceres*, Fed. Cas. No. 12,881.

Raft of logs in tow of tug in navigable waters. *The F. & P. M.*, 33 Fed. Rep. 511.

Fish nets extending out from the shore into navigable waters. *The Armorica,* 189 Fed. Rep. 503.

Steel brooms thrown into navigable water through the breaking down of defective wharf. *The City of Lincoln,* 25 Fed. Rep. 835, but see *contra, Martin* v. *West,* 222 U. S. 191.

Salvage by a tug in extinguishing a fire on a steamship in drydock undergoing repairs. *The Steamship Jefferson,* 215 U. S. 130.

Hire of a dredge while engaged in a partly land transaction in dredging material from a navigable stream for the purpose of piping it onto the land in aid of a land project. *Bowers* v. *Federal Contracting Co.,* 148 Fed. Rep. 290.

Repairs to an intrastate canal boat in drydock. *The Robert W. Parsons,* 191 U. S. 17.

Injury to a floating elevator anchored to and moving up and down upon wooden spuds imbedded in the mud under navigable waters. *The Frank R. Gibson,* 87 Fed. Rep. 364.

Courts of Admiralty have declined to take jurisdiction of injuries to the following classes of objects upon the ground that they were land structures:

Warehouse on wharf, houses on shore and contents of warehouse on shore. *The Plymouth,* 3 Wall. 20; *Ex parte Phenix Ins. Co.,* 118 U. S. 610; *Johnson* v. *Elevator Co.,* 119 U. S. 388.

Injuries to a pier, wharf or dock, and to persons or property thereon. *Cleveland Terminal R. R.* v. *Cleveland S. S. Co.,* 208 U. S. 316; *The Mary Stewart,* 10 Fed. Rep. 137; *The Mary Garrett,* 63 Fed. Rep. 1009; *The Albion,* 123 Fed. Rep. 189; *Homer Ramsdell Co.* v. *Compagnie Générale Co.,* 63 Fed. Rep. 845; *The Curtin,* 152 Fed. Rep. 588; *The Haxby,* 94 Fed. Rep. 1016; *The Ottowa,* Fed. Cas. No. 10,616.

Injuries to bridges which immediately concern com-

merce upon land. *The Troy*, 208 U. S. 321; *The Rock Island Bridge*, 6 Wall. 213; *City of Milwaukee* v. *Curtis*, 37 Fed. Rep. 705; *The John C. Sweeney*, 55 Fed. Rep. 540; *The Neil Cochran*, Fed. Cas. No. 7996.

A marine railway the upper end of which was on shore and securely and permanently fastened to the shore. *The Prof. Morse*, 23 Fed. Rep. 803.

The surface part of borings made to locate aqueduct. *The Poughkeepsie*, 162 Fed. Rep. 494; *S. C.*, aff'd in 212 U. S. 558.

Goods lost in navigable waters through being thrown from a wharf as a result of the collision by a vessel with the wharf. *The Haxby*, 95 Fed. Rep. 170.

A derrick used in erecting light house pier. *The Maud Webster*, Fed. Cas. No. 9302. See also on question of admiralty jurisdiction: *The Steamer Lawrence*, 1 Black, 522, 526; *Benedict's Admiralty*, 3d ed., §§ 329, 358; 1 Kent's Comm., 14th ed. at p. 379; *Toledo S. S. Co.* v. *Zenith Transp. Co.*, 184 Fed. Rep. 391; *The Harriett*, 1 Wm. Robinson Adm. 183, 192; *The Virgin*, 8 Pet. 537, 549; *American Ins. Co.* v. *Johnson*, 1 Blatch. & H. 9; *S. C.*, 1 Fed. Cas. No. 303; *Dean* v. *Angus*, Bee, 369; *S. C.*, Fed. Cas. No. 3702.

For discussions or application of the general principles above stated, see also *The J. E. Rumble*, 148 U. S. 1, 15; *Andrews* v. *Wall*, 3 How. 568; *The Lottawanna*, 20 Wall. 201, 223; *S. C.*, 21 Wall. 558, 582; *The Hamilton*, 207 U. S. 398, 406; *The Mary Ford*, 3 Dall. 188; *Waring* v. *Clarke*, 5 How. 441; *Erie R. R.* v. *Erie Transp. Co.*, 204 U. S. 220; *United States* v. *Cornell Steamboat Co.*, 202 U. S. 184; *The Genessee Chief*, 12 How. 443; *The Angelique*, 19 How. 239; *The John E. Mulford*, 18 Fed. Rep. 455, 459; *The Mariska*, 107 Fed. Rep. 989; *Leland* v. *Medora*, 2 Woodb. & M. 92; *S. C.*, Fed. Cas. No. 8237; Rule 43 in Admiralty.

For other cases containing instructive discussions of the rule that locality is the test of jurisdiction in tort,

see *The Belfast*, 7 Wall. 624, 637; *Manro* v. *Almeida*, 10 Wheat. 473; *Waring* v. *Clarke*, 5 How. 441, 459; *The Lexington*, 6 How. 344, 394; *Ex parte Easton*, 95 U. S. 68, 72; *Leather* v. *Blessing*, 105 U. S. 626, 630; *Panama R. R.* v. *Napier Shipping Co.*, 166 U. S. 280, 285; *Atlee* v. *Packet Co.*, 21 Wall. 389; *The Strabo*, 90 Fed. Rep. 110; *Herman* v. *Port Blakely Co.*, 69 Fed. Rep. 646; *The H. S. Pickands*, 42 Fed. Rep. 239; *Etheridge* v. *City of Philadelphia*, 26 Fed. Rep. 43; *The C. Accame*, 20 Fed. Rep. 642; *Leonard* v. *Decker*, 22 Fed. Rep. 741; *The Florence*, 2 Flip. 56; *S. C.*, Fed. Cas. No. 4880; *Steel* v. *Thacher*, 1 Ware, 85; *S. C.*, Fed. Cas. No. 13,348.

A court of admiralty, having rightfully taken jurisdiction of the damage to appellant's pile driver and barge, should retain it to redress the entire wrong inflicted by the same maritime tort.

*Mr. Henry R. Edmunds* for appellee:

An injury to a structure affixed to the land and wholly or partially supported by it, is not capable of being redressed in admiralty. *The Professor Morse*, 23 Fed. Rep. 803; *The Maud Webster*, 8 Ben. 547, and see following instances in which the property specified was involved:

A pier, because it is a part of the land, and property on a pier, because it is on land. *The Haxby*, 95 Fed. Rep. 170.

Houses on a wharf, destroyed by a fire originating on a vessel lying thereby. *The Plymouth*, 3 Wall. 20.

A bridge with a draw, because it is a part of the land. *The John C. Sweeney*, 55 Fed. Rep. 540; *Martin* v. *West*, 222 U. S. 191.

A building on land, struck by the jib boom of a moving vessel. *Johnson* v. *Chicago Elev. Co.*, 119 U. S. 388.

A swinging bridge, because it is a part of the land. *Milwaukee* v. *The Curtis*, 37 Fed. Rep. 705; *The Blackheath*, 195 U. S. 361, distinguished.

An unfinished structure, for whatever purpose intended, is not an aid to navigation. So far as it has anything to do with navigation, it is an obstruction and a source of danger. Neither is it subject to admiralty jurisdiction unless it is an instrumentality of the Government. These two elements must coexist in order to bring the case within the rule laid down by *The Blackheath.*

A drawbridge is an aid to navigation. It has no other purpose. It is a disadvantage to the bridge itself. It is never employed except where vessels have a right to pass. It is thus an aid to navigation just as truly as a beacon is, though in a different way. Yet an injury to it is not cognizable in admiralty. The *John C. Sweeney,* 55 Fed. Rep. 540; *Martin* v. *West,* 222 U. S. 191. So also a swinging bridge. *Milwaukee* v. *The Curtis,* 37 Fed. Rep. 705. The reason is obvious. The drawbridge is not a Government aid to navigation.

Since *The Blackheath* was reported, two cases, *Cleveland Terminal Co.* v. *Steamship Co.,* 208 U. S. 316, and *The Troy, Id.* 321, have come before this court, and it has decided that the doctrine of *The Plymouth* is still in force, unaffected by *The Blackheath.*

Although the injury was committed in navigable water, there is no case actually deciding that the sole test of jurisdiction in cases of tort is locality. The true meaning of the rule of locality in cases of maritime torts is that the wrong and injury complained of must have been committed wholly upon the high seas or navigable waters. The rule goes no farther than this. *The Plymouth,* 3 Wall. 34.

A tort must be committed wholly upon navigable waters, but the converse is not true. It is not the law that everything that takes place upon navigable waters is cognizable in admiralty. Such a doctrine would lead to absurd consequences. If a malicious or negligent act were committed by a bather in the surf at Atlantic City,

causing the death of another by drowning, the widow would proceed to obtain redress by filing a libel, on the ground that the cause of action arose wholly in navigable water.

Whether a certain tort is maritime must be resolved according to the character and locality of the injured thing. *Martin* v. *West*, 222 U. S. 191, 197; *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52; *Campbell* v. *Hackfeld Co.*, 125 Fed. Rep. 696; *Cleveland Terminal R. R.* v. *Cleveland S. S. Co.*, 208 U. S. 316, 321.

The temporary platform was placed around the building which was under construction solely for the purpose of aiding in the work; and, in its legal aspect was on the same footing as the tools used by the laborers. It was not maritime in its character or in its object.

The jurisdiction of the Federal courts in admiralty cases is given by the Constitution. Not even Congress has power to add anything to it. If a subject is not within this class, the courts can take no cognizance of it, whether or not it is connected, as to time and place, with some others which they clearly have power to adjudicate. *The St. David*, 209 Fed. Rep. 985.

MR. JUSTICE HUGHES delivered the opinion of the court.

The appellant filed a libel *in rem* in the admiralty against the steamship "Raithmoor" to recover damages for tort. The steamship, coming up the Delaware River on the evening of July 18, 1909, collided with a scow and pile driver belonging to the appellant, and also with a structure which the appellant was erecting for the United States to serve as a beacon, and with a temporary platform used in connection with the work of construction. For the injury to the scow and pile driver, a decree was entered in favor of the libellant. But the District Court

held that there was no jurisdiction in the admiralty of the claim for the damage to the structure and platform, and the libellant appeals. *The Raithmoor*, 186 Fed. Rep. 849.

The District Court thus states the character and location of the structure:

"The company" (the appellant) "was executing an independent contract with the United States, which bound them to furnish the necessary materials, labor, plant, etc., and to erect in place a foundation pier to receive a gas beacon. The work was under the continual supervision of a government official, but had neither been finished nor accepted. The structure was to consist of three cylindrical piles of reinforced concrete to be sunk about 19-½ feet into the bottom of the river, and to project 12 feet above mean high water, these to be covered with a sheet steel cap. The piles were to be encased in steel and to be protected also by depositing rip-rap around them to a specified height. When completed, the pier was to be used solely as a beacon on the edge of a navigable channel that has not yet been made ready, and the government was to install upon the cap a lamp and other appliances. The site is three-fourths of a mile from the eastern or New Jersey shore, and about two miles from the western or Delaware shore, of the river, and is surrounded by navigable water, about twenty-seven feet deep at low tide. The work was begun in June, and at the time of the collision was approaching completion. The piles were in place, and not much remained to be done except to put the metal cap into place and deposit the rip-rap. The necessities of the work required a temporary platform to be built close to the concrete piles. This was of wood, about 15 feet square, and rested upon wooden piling driven into the bottom of the river." *Id.*, p. 850.

The decisions of this court with respect to the jurisdic-

tion of the admiralty in cases of tort make the question
to be determined a very narrow one.  In *The Plymouth*,
3 Wall. 20, 36, it was broadly declared that "the whole,
or at least the substantial cause of action, arising out of
the wrong, must be complete within the locality upon
which the jurisdiction depends—on the high seas or the
navigable waters."  Accordingly it was held that a libel
for damage to a wharf and storehouses caused by a fire
started on a vessel through negligence was beyond the
limit of admiralty cognizance, as the damage was wholly
done, and the wrong was thus consummated, upon the
land.  Upon this ground, the jurisdiction of the District
Court to entertain a petition for the limitation of the
liability of the ship owner in such a case was denied in
*Ex parte Phenix Insurance Co.*, 118 U. S. 610.  The prin-
ciple was restated in *Johnson* v. *Chicago &c. Elevator
Co.*, 119 U. S. 388, 397.  And see *Knapp, Stout & Co.* v.
*McCaffrey*, 177 U. S. 638, 643; *Homer, Ramsdell Co.* v.
*La Compagnie Générale Transatlantique*, 182 U. S. 406,
411.  But in *The Blackheath*, 195 U. S. 361, a distinction
was drawn, and the jurisdiction of the admiralty was
upheld in the case of an injury caused by a vessel in neg-
ligently running into a beacon which stood fifteen or
twenty feet from the channel of Mobile river, or bay,
in water twelve or fifteen feet deep, and was built on piles
driven firmly into the bottom.  The court pointed out
the essential basis of the decision, in saying: "It is enough
to say that we now are dealing with an injury to a govern-
ment aid to navigation from ancient times subject to the
admiralty, a beacon emerging from the water, injured by
the motion of the vessel, by a continuous act beginning
and consummated upon navigable water, and giving char-
acter to the effects upon a point which is only technically
land, through a connection at the bottom of the sea."
(*Id.*, p. 367.)  It was suggested in the concurring opinion
of Mr. Justice Brown (*Id.*, p. 368) that the decision

practically overruled the earlier cases, and that it recognized the principle of the English statute extending the jurisdiction of the admiralty court to "any claim for damages by any ship." This consequence, however, was expressly denied in *Cleveland Terminal R. R.* v. *Cleveland Steamship Co.*, 208 U. S. 316, 320. In that case it was decided that the admiralty did not have jurisdiction of a claim for damages caused by a vessel adrift, through its alleged fault, to the center pier of a bridge spanning a navigable river and to a shore abutment and dock. Referring to *The Blackheath*, and drawing the distinction we have noted, the court said: "The damage" (that is, in *The Blackheath*) "was to property located in navigable waters, solely an aid to navigation and maritime in nature, and having no other purpose or function. . . . But the bridges, shore docks, protection piling, piers, etc.," (of the Cleveland Terminal Company) "pertained to the land. They were structures connected with the shore and immediately concerned commerce upon land. None of these structures were aids to navigation in the maritime sense, but extensions of the shore and aids to commerce on land as such." The decision in *The Troy*, 208 U. S. 321, was to the same effect. The steamer Troy had collided with the center pier of a swinging span over the St. Louis river, a navigable stream, and the jurisdiction of the admiralty of a libel for the injury was denied. See, also, *Phœnix Construction* Co. v. *The Poughkeepsie,* 212 U. S. 558; *Martin* v. *West,* 222 U. S. 191, 197.

If then, in the present instance, the metal cap of the beacon had been in place, the rip-rap deposited, and the beacon put into actual service, the case would fall exactly within the ruling of *The Blackheath* and the admiralty would have jurisdiction although the structure was attached to the bottom. There would be no difference in the two cases which would afford the slightest ground for argument. If, on the other hand, simply because of the

incompleteness of the beacon, it is to be exclusively identified with the land and its intended purpose is to be disregarded, the admiralty would have no jurisdiction. We think that a distinction based solely on the fact that the beacon was not fully completed would be a needless refinement,—a nicety in analysis not required by reason or precedent.. We regard the location and purpose of the structure as controlling from the time the structure was begun. It was not being built on shore and awaiting the assumption of a maritime relation. It was in course of construction in navigable waters, that is, at a place where the jurisdiction of admiralty in cases of tort normally attached,—at least in all cases where the wrong was of a maritime character. See *The Plymouth, supra; Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 58–61, and cases there cited. The relation of the structure to the land was of the most technical sort, merely through the attachment to the bottom; it had no connection, either actual or anticipated, with commerce on land. It was simply to serve as an aid to navigation, and while it had not yet been finished and accepted, it was being erected under the constant supervision of a Government inspector acting under the authority of the United States in the improvement and protection of navigation. It is urged that the Government might abandon its plan; but there has been no abandonment. The question is not as to an abandoned mass, but as to a beacon in course of erection. Even a completed beacon might be abandoned and whatever question might arise in such a case is not presented here. Again, an analogy is suggested to the case of a vessel which is being constructed on shore, but the argument falls short, as it is to be remembered that as soon as a vessel is launched, although still incomplete, it is subject to the admiralty jurisdiction. *Tucker* v. *Alexandroff,* 183 U. S. 424, 438. This is not the case of a structure which at any time was identified with the shore, but from the beginning

of construction locality and design gave it a distinctively maritime relation. When completed and in use, its injury by a colliding ship would interfere, or tend to interfere, with its service to navigation; and, while still incomplete, such an injury would tend to postpone that service. We know of no substantial reason why the jurisdiction of the admiralty should be sustained in the one case and denied in the other.

With respect to the temporary platform, it is to be observed that this was a mere incident to the structure and as such the jurisdiction would extend to the claim for the damage to it.

The decree, so far as it dismissed the libel for want of jurisdiction, is reversed, and the cause is remanded for further proceedings in conformity with this opinion.

*It is so ordered.*