## THE TOLEDO.

### (District Court, D. New Jersey. March 14, 1917.)

ADMIRALTY ☞19 — JURISDICTION — MARITIME TORTS — INJURY TO MARINE CABLE.

    Admiralty has jurisdiction of a suit for the negligent injury by a vessel of a marine cable resting on the bottom under navigable waters, although the ends of the cable are supported on the shore.

    [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 233, 234.]

In Admiralty. Suit by the Postal Telegraph Cable Company against the dredge Toledo. On exceptions to libel. Exceptions dismissed.

Exceptions to libel based upon ground that injury to a cable laid upon the bottom of the waters of Kill von Kull, and attached to the land on each side of the Kill von Kull, is not an admiralty and maritime tort.

    Vredenburgh, Wall & Carey, of Jersey City, N. J., for libelant.

    Foley & Martin, of New York City, for claimant.

DAVIS, District Judge. Libelant instituted proceedings in the above-stated cause against the dredge Toledo, her tackle, etc., for the recovery of damages alleged to have been done on the 8th day of July, 1916, by the dredge Toledo to a submarine telegraphic cable laid on the bottom under the waters of the Kill von Kull from the shore at Elizabeth, N. J., to the shore at Staten Island, N. Y. The injury is alleged to have been done about 200 feet from the New Jersey shore, at a point admittedly in the tidal and navigable waters of the United States, "at a place where the jurisdiction of admiralty in cases of tort normally attach, at least in all cases where the wrong was of a maritime character." Claimants filed exceptions to the libel on the ground that it did not set forth an admiralty and maritime cause of action; the cable alleged to have been damaged not being a maritime object, instrument, or facility of navigation, because it rested upon and was incorporated with the soil under the waterway, and operated as an integral part of the libelant's system of telegraphic wire extending throughout the United States. The whole question at issue is based upon "the objection to the jurisdiction of the court, upon the theory that the cable was a land structure, and that no maritime damage occurred of which jurisdiction can be had by admiralty."

The decisions seem to be against the contention of claimants. Admiralty has taken jurisdiction in a number of cable cases, in which, however, the question of jurisdiction was not raised. Stephens v. Western Union Telegraph Co., 22 Fed. Cas. 1301; Ladd v. Foster (D.

C) 31 Fed. 827; Albina Ferry Co. v. The Imperial (D. C.) 38 Fed. 614, 3 L. R. A. 234; The City of Richmond (D. C.) 43 Fed. 85; The William H. Bailey, 103 Fed. 799, affirmed 111 Fed. 1006, 50 C. C. A. 76; The Anita Berwind (D. C.) 107 Fed. 721. There are two recent cases in which the point in issue here has been raised and decided adversely to claimants' contention. Postal Telegraph Cable Co. v. P. Sanford Ross, Inc. (D. C.) 221 Fed. 105. In this case, Judge Chatfield of the Eastern district of New York, reviews the authorities and holds that, notwithstanding the cable is laid on the bottom of tidal waters of the United States and attached to the land at each end of the submarine cable, admiralty nevertheless has jurisdiction. In the case of Thomas v. Lane, 2 Sumn. 1, 9, Fed. Cas. No. 13,902, Mr. Justice Story said:

"I have always understood that the jurisdiction of the admiralty is exclusively dependent upon the locality of the act. The admiralty has not, and never (I believe) deliberately, claimed to have any jurisdiction over torts, except such as are maritime torts; that is, such as are committed on the high seas, or on waters within the ebb and flow of the tide."

Of this rule Mr. Justice Hughes, in the case of the Atlantic Transport v. Imbrovek, 234 U. S. 52, 59, 34 Sup. Ct. 733, 734 [58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157] said:

"This rule—that locality furnishes the test—has been frequently reiterated, with the substitution (under the doctrine of The Genesee Chief, 12 How. 443 [13 L. Ed. 1058]), of navigable waters for tide waters."

In the case of the Philadelphia, Wilmington & Baltimore R. R. Co. v. Philadelphia & Havre de Grace Steam Towboat Co., 23 How. 209, 215, 16 L. Ed. 433, the court said:

"The jurisdiction of courts of admiralty in matters of contract depends upon the nature and character of the contracts, but in torts it depends entirely on locality."

In the case of The Plymouth, 3 Wall. 20, 35, 18 L. Ed. 125, the court said:

"The jurisdiction of the admiralty does not depend upon the fact that the injury was inflicted by the vessel, but upon the locality—the high seas, or navigable waters—where it occurred. Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance."

Mr. Justice Hughes again said, in the case of The Raithmoor, 241 U. S., 166, 176, 36 Sup. Ct. 514, 516 [60 L. Ed. 937]:

"We regard the location and purpose of the structure as controlling from the time the structure was begun. It was not being built on shore and awaiting the assumption of a maritime relation. It was in course of construction in navigable waters; that is, at a place where the jurisdiction of admiralty in cases of tort normally attached, at least in all cases where the wrong was of a maritime character."

In the case of Postal Telegraph Cable Company v. P. Sanford Ross, supra, Judge Chatfield said:

"The accident, therefore, occurred within the physical limits of admiralty jurisdiction, it was occasioned by the operations of the anchor and the handling of the boat, and the cable itself is akin rather to matters connected with the ocean than to those of the land, although it was supported at each end upon the shore."

He further says:

"But suppose an injury were caused to the Atlantic cables, on the high seas, by a steamer. Could it be held that, because the cable had a landing on shore, it was a land fixture, and was not an object wholly within the maritime jurisdiction, where it lay supported by the bottom and not by its own buoyancy? If so, no damage by a boat to a sunken dry dock or vessel could lie in admiralty, if there were a shore mooring, and if it could not at the time be navigated."

This decision was followed in the case of United States v. North German Lloyd (D. C.) 239 Fed. 587, as reported in the New York Law Journal on Tuesday, January 20, 1917. This was a case in which it was alleged that the anchor of the Princess Alice had been negligently allowed to injure the government cables extending from Ft. Wadsworth to Ft. Hamilton. The question of jurisdiction in that case was raised, and Judge Manton held that admiralty had jurisdiction.

It would seem that the cases cited above were, on principle, correctly decided. When a vessel on the high seas or navigable waters of the United States commits a tort by negligently injuring a cable, the contention that the cable was lying on the bottom of the river or sea, and the ends thereof ultimately reached the land, and therefore admiralty does not have jurisdiction, ought not prevail, when all the other elements necessary to constitute a maritime tort are present.

The exceptions will therefore be dismissed.