## UNITED STATES v. BRUCE DRY DOCK CO.

No. 6893.

Circuit Court of Appeals, Fifth Circuit.

July 10, 1933.

Rehearing Denied Aug. 26, 1933.

George Earl Hoffman, U. S. Atty.; and Wm. Logan Hill, Asst. U. S. Atty., both of Pensacola, Fla., and Edouard F. Henriques, Sp. Asst. in Admiralty to Atty. Gen., of New Orleans, La., for the United States.

Philip D. Beall and John M. Coe, both of Pensacola, Fla., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

The lightship Southpass No. 102, a public vessel of the United States, while moored at a wharf in a shipyard on Pensacola Bay, broke from her moorings during a severe hurricane which struck Pensacola on Monday, September 20, 1926, was thrown astern onto and totally destroyed a floating dry dock. Appellee, owner of the shipyard, wharf, and dry dock, filed its libel in personam against the United States under 46 USCA § 781, alleging as acts of negligence (1) that the master of the lightship refused to comply with appellee's request to remove that vessel from the wharf and anchor in the Bay away from the shipyard, and (2) that the master and crew failed to slacken the lines by which the lightship was moored to the wharf at the height of the hurricane, which was accompanied by an unusually high tide, with the result that the bowline snapped and permitted the lightship to fall back upon the floating dry dock that was destroyed. An exception to the libel on the ground that the dam-

age complained of was not within the admiralty jurisdiction was overruled. Appellant's answer admitted the refusal of the master to remove the lightship from the wharf, but denied any negligence in connection with the handling of the lines by means of which the lightship was moored to the wharf. The answer also sought to justify the master's refusal to leave the wharf upon the ground that a contract under which appellee was making repairs had not been completed, and therefore the lightship during the hurricane was in charge and held at the risk of appellee. The district judge made findings of fact from which he concluded that the acts of negligence complained of were sustained by the evidence, and that repairs on the lightship had been completed before September 18th, by which time it was common knowledge that the hurricane was expected to strike Pensacola Bay. Appellee had taken the precaution to moor its floating dry docks in their beds on the bottom of the slip. On Saturday the 18th the master of the lightship communicated with the superintendent at New Orleans and was advised to use all due precaution. Nevertheless he stubbornly refused not only to move his vessel himself, but also to permit appellee to move it from the wharf out into the open water of the Bay. The lightship was equipped with two heavy mushroom anchors, one of which weighed 6,000 pounds; and it was the consensus of opinion among the experienced sea captains who testified that she would have been in a safer position if she had been anchored in the Bay.

The government's assignments of error are that the trial court erred (1) in overruling the exception that there was no jurisdiction in admiralty to award damages; and (2) in sustaining the charges of negligence made in the libel against the master and crew of the lightship.

In our opinion the cause of action alleged was within the admiralty jurisdiction since the tort complained of was maritime in its nature and occurred in navigable water. A floating dry dock is used exclusively for the repair of ships; it has no connection with commerce on land. The Raithmoor, 241 U. S. 166, 36 S. Ct. 514, 60 L. Ed. 937; Gonsalves v. Morse Dry Dock & Repair Co., 266 U. S. 171, 45 S. Ct. 39, 69 L. Ed. 228; Doullut & W. Co. v. United States, 268 U. S. 33, 45 S. Ct. 411, 69 L. Ed. 832. It is not essential to jurisdiction in admiralty that the tort be committed on board a vessel. The Plymouth, 3 Wall. 20, 18 L. Ed. 125; Atlantic Transport Co. of W. Va. v. Imbrovek, 234 U. S. 52, 60, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157; London, etc., Co. v. Industrial Acc. Commission, 279 U. S. 109, 49 S. Ct. 296, 73 L. Ed. 632. Cope v. Vallette Dry Dock Co., 119 U. S. 625, 7 S. Ct. 336, 30 L. Ed. 501, relied on by appellant, is not to the contrary; it merely holds that a floating dry dock is not a subject of salvage service, because it is not a ship or vessel.

Coming to the merits of the case, we think it is immaterial whether the repair work on the Southpass had been completed as appellee contends, or whether there was something more to be done under the contract as the master and engineer insist in their testimony. At any rate the vessel had been taken off the ways and placed back in the water. If she remained technically in appellee's charge, appellee should have been permitted by the master to remove her to a position of comparative safety. If the work had been completed, the master himself should have removed her from the slip. In either event, it was negligence under the circumstances, according to all the testimony, to leave the vessel in the slip insecurely moored to the wharf, there to be buffeted about by the hurricane. It is argued on behalf of appellant that the hurricane was the efficient cause of the damage. But appellant is not entitled to take that position in the absence of a showing that the master and crew took every reasonable precaution to prevent the damage that was done.

The decree is

Affirmed.