**TRAVELERS INS. CO. et al. v. BRANHAM, Deputy Commissioner, United States Employees Compensation Commission, et al.**

No. 5069.

Circuit Court of Appeals, Fourth Circuit.

May 21, 1943.

Leon T. Seawell, of Norfolk, Va., for appellants.

Braden Vandeventer, and Russell T. Bradford, Asst. U. S. Atty., both of Norfolk, Va. (Sterling Hutcheson, U. S. Atty., of Norfolk, Va., and Ward E. Boote, Chief Counsel, U. S. Employees' Compensation Commission, and Herbert P. Miller, Associate Counsel, both of Washington, D. C., on the brief), for appellees.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a decree of the United States District Court affirming a decision by Charles Branham, Deputy Commissioner, United States Employees Compensation Commission, Fifth District (hereinafter called the Commissioner), and awarding to Florence Phillips, a widow of Albert Phillips, the compensation allowed

by the Commission under the provisions of the Longshoremen's and Harbor Workers' Compensation Act (hereinafter called the Act), 33 U.S.C.A. Chapter 18, Section 901 et seq. The only question presented for our decision is whether the accident resulting in the death of Albert Phillips, came within the ambit of the Act. The specific provision of the Act, relative to coverage, with which we are particularly concerned, is Section 2(4), 33 U.S.C.A. § 902(4):

"The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)."

The Commissioner made the following findings of fact:

"That on the 1st day of May, 1941, Albert J. Phillips was in the employ of the employer above named at Portsmouth in the State of Virginia, in the Fifth Compensation District, established under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, and that the liability of the employer for the payment of compensation under said Act was insured by The Travelers Insurance Company; that on said day the said Albert J. Phillips, while performing service for said employer upon the navigable waters of the United States, sustained personal injury which arose out of and in the course of his employment and resulted in his death, while employed as a general labor foreman, engaged in the construction of a dry dock located adjacent to the Elizabeth River at the Norfolk Navy Yard, Portsmouth, Virginia; that on said day the said Phillips accidentally fell from the gangplank of a tremie barge, a distance of about 14 feet, landing on the ground below, and resulting in fracture of the fifth cervical vertebra, with displacement, causing paralysis of the lower portion of the body, from which he died on May 7, 1941; that at the time of the accident the said employer was engaged in the construction of a dry dock for the United States Navy, the dimensions of which are 1,100 feet long, 150 feet wide, and 50 feet deep; that there was used in connection with the construction of said dry dock a so-called tremie barge, located upon the navigable waters of the United States, which was about 300 feet long and about 35 feet wide, and which was originally a railroad car float; that the employer constructed thereon eight towers to handle concrete and a system of hoppers to control the movement of concrete; that a gangway extended from the barge to the shore trestle; that the barge operated inside the dry dock, and was shifted up and down therein by means of winches on the deck and cables extending to the shore; that the barge had no propulsion power of its own; that it was towed into the dry dock by a tugboat; that it was moved to new locations within the dry dock every eight or ten hours;

"That at the time of the accident the principal work consisted of underwater concreting known as 'tremie' concreting; that the concrete was distributed from a concrete plant located on the shore through iron pipes extending over the trestle, the gangplank and onto the barge, from whence it was poured through hoppers into pipes leading to the underwater forms on the floor of the dry dock; that the gangplank was 59 feet long and 14½ feet wide, was made fast to the barge by a series of pins and was raised and lowered by means of a hoist on the barge which was operated by steam; that the gangplank was a part of the barge's equipment;

"That just before the accident the pipes had been disconnected, the gangplank raised, and the barge moved to a new position; that the said Phillips, decedent, was at that time engaged in supervising work in connecting the pipes to the barge at the new location; that while so engaged he was seen by a co-worker, one A. S. Kohl, leaving the barge and walking toward the shore trestle and, while on the gangplank of the barge, inside the dry dock, he accidently fell from the gangplank to the ground below, resulting in the injuries which caused his death; that the place where he landed was within the range of mean low tide and mean high tide; that the accident occurred at low tide and the ground underneath the gangplank was damp from the receding tide; that at high tide the water would have been about 18 inches deep at the place where decedent landed;

"That the said dry dock was being constructed exclusively for the repair and other work about ships; that it is designed solely as an aid to navigation, and has no relation to land commerce; that decedent was engaged in a maritime operation and enterprise, and his employment was maritime; that his death occurred on the navigable waters of the United States

and is within the purview of the said Longshoremen's Act."

There was also in the record uncontroverted evidence that at certain places within the uncompleted dry dock the water, flowing in from the Elizabeth River, reached a depth of more than 50 feet, and that, in the conversion of the car-float into a tremie barge for pouring concrete under water, no important changes were made in the hull, so that the barge was still clearly a vessel, within the admiralty meaning of that term, which was capable of engaging in maritime navigation. Cf. Butler v. Robins Dry Dock & Repair Co., 240 N.Y. 23, 147 N.E. 235.

■ Counsel for appellants, in seeking a reversal of the decree below, urge:

(1) The accident did not occur upon navigable waters of the United States;

(2) The accident did not occur upon a dry dock;

(3) The deceased was not engaged at the time of the accident in any maritime employment;

(4) In any event, the matter is one of purely local concern.

In connection with the second of these contentions, appellants argue that the language of the Act contemplates a completed structure, a finished dry dock, and not, as here, an unfinished structure on which only about one-twentieth of the work had been actually completed. Appellants insist upon the analogy of the building of a ship and cite the recent decision of our Court in Frankel v. Bethlehem-Fairfield Shipyard, 4 Cir., 132 F.2d 634. That case is not in point here, for what was there held was that Frankel was not a "seaman", as that term is used in the Jones Act, 46 U.S.C.A. § 688. In the Raithmoor, 241 U.S. 166, 36 S.Ct. 514, 60 L.Ed. 937 (though the facts in the Raithmoor case and the instant case are different) Chief Justice Hughes (241 U.S. at pages 175-177, 36 S.Ct. at page 516, 60 L.Ed. 937) used language indicating that such an analogy is not a happy one. Cf. Merritt-Chapman & Scott Corporation v. Bassett, 50 F.Supp. 488, decided April 8, 1943, by the United States District Court for the Western District of Michigan, Northern Division. See, also, The Blackheath, 195 U.S. 361, 25 S.Ct. 46, 49 L. Ed. 236; United States v. Bruce Dry Dock Co., 5 Cir., 65 F.2d 938.

■ As to whether the employment of Phillips was maritime in nature, and as to whether the accident occurred on navigable waters, see John Baizley Iron Works v. Span, 281 U.S. 222, 50 S.Ct. 306, 74 L. Ed. 819; The Admiralty Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633; Minnie v. Port Huron Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631; South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Diomede v. Lowe, 2 Cir., 87 F.2d 296; Butler v. Robins Dry Dock & Repair Co., 240 N.Y. 23, 147 N.E. 235.

■ The Act, as a remedial statute, must be liberally construed. Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 52 S.Ct. 187, 76 L.Ed. 366; DeWald v. Baltimore & Ohio Railway Co., 4 Cir., 71 F.2d 810. Since the enactment of the Act, the United States Supreme Court, in this particular connection, has certainly given a restricted application to the doctrine of local concern, when the application of that doctrine would deny a remedy under the Act. Parker v. Motor Boat Sales Co., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184; Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. ——. See, also, Robinson on Admiralty, p. 122. And compare the opinion of Mr. Justice Rutledge in Aguilar v. Standard Oil Co., 63 S.Ct. 930, 87 L.Ed. ——, decided by the United States Supreme Court April 19, 1943. It would seem that Congress, in the Act, intended to exercise to the fullest extent all the power and jurisdiction it possessed over the subject matter. Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598; Continental Casualty Co. v. Lawson, 5 Cir., 64 F.2d 802. Then, there is the very strong language of Mr. Justice Black in Davis v. Department of Labor, 317 U.S. 249, 63 S.Ct. 225, 229, 87 L.Ed. ——:

"Where there has been a hearing by the federal administrative agency entrusted with broad powers of investigation, fact finding, determination, and award, our task proves easy. There we are aided by the provision of the federal act, 33 U.S.C. § 920, 33 U.S.C.A. § 920, which provides that in proceedings under that act, jurisdiction is to be 'presumed, in the absence of substantial evidence to the contrary'. Fact findings of the agency, where supported by the evidence, are made final. Their conclusion that a case falls within the federal jurisdiction is therefore entitled to great weight and will be rejected only in cases of apparent error."

Attention is also called to the language of this same Justice in Parker v. Motor Boat Sales Co., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184.

 Here we have the precise findings of the Commissioner, which were affirmed by the United States District Court. In the light of the whole picture, we cannot say, as to the instant case, there is any "apparent error" in either the findings of fact or in the finding that this case falls within the ambit of the Act.

We, accordingly, affirm the decree of the District Court.

Affirmed.