## THE STEEL RANGER.

District Court, S. D. New York.
April 10, 1945.

John F. X. McGohey, U. S. Atty., of New York City (Nicholas J. Healy, 3rd, Sp. Asst. to the U. S. Atty., of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox & Keating, of New York City (Robert S. Erskine, of New York City, of counsel), for claimant-respondent.

LEIBELL, District Judge.

The United States brings this suit in admiralty for damages caused by the SS Steel Ranger, owned by respondent, Isthmian Steamship Company, to the cable, coils and appurtenances of a magnetic channel range laid out in the navigable waters of Bolivar Roads Channel, in the harbor of Galveston, Texas. The respondent served a notice of motion returnable February 2, 1945, asking for—

"(1). An order dismissing the libel herein and cancelling all bonds and stipulations for costs and value on the ground that the libel fails to allege a cause of action within the admiralty and maritime jurisdiction of the Court; or, in the alternative, for

"(2). An order dismissing the libel in rem against the Steel Ranger and cancelling all stipulations for costs and value filed by claimant-respondent thereunder and transferring the libelant's suit in personam against Isthmian Steamship Company to the common law side of the Court in order that the Government's alleged cause of action and the issues of negligence raised therein may be tried by a jury in accordance with the principles governing actions at law; * * *".

The libel filed March 25, 1943, was both in rem against the vessel, the SS Steel Ranger, and in personam against the Isthmian Steamship Company, the owner of the vessel. The original libel alleged that the libelant "is a corporation sovereign and owner of certain submarine cables of the Magnetic Channel Range located in Bolivar Roads channel, Galveston Harbor, Galveston, Texas, used as aids to navigation, which, until the occurrence herein described, were at all times in good order and condition" and that the Steel Ranger negligently dropped her anchor in the area of libelant's submarine cables and fouled and damaged them. No particulars were set forth in the libel of the manner in which the submarine cables were used as "aids to navigation". In the course of the argument of the respondent's motion the proctor for the libelant stated that he would serve and file an amended libel setting forth the particulars to support the allegation that the magnetic cables were an aid to navigation.

The amended libel was filed April 3rd, 1945, and contains, among others, the following allegations:

"Second: At all the times herein mentioned, the libelant was the owner of a certain magnetic channel range, lawfully constructed in Bolivar Roads Channel, in the harbor at Galveston, Texas.

"Third: * * * The primary purpose for which the said magnetic channel range had been constructed was as an aid to navigation by checking the magnetic field of vessels passing over it, thus disclosing the effectiveness with which such vessels had been degaussed, that is, protected against magnetic mines. Upon completion of the installation of the instruments in the control station, the magnetic channel range was to be used to determine whether such vessels could safely navigate in certain magnetically mined areas. It could also have been used to detect the presence of

submarines and to assist in fixing the positions of ships navigating through the channel in fog, although it was not used for such purposes between the time it was finally repaired and put into operation and the time of its destruction by a hurricane about seven weeks later. During said period the magnetic channel range was, however, frequently used to check the degaussing equipment of vessels."

It was understood by counsel that the respondent's motion in respect to the original libel should apply also to the amended libel.

The question here presented is this: Was the injured thing—the magnetic cable, its coils and appurtenances—an instrument of navigation or an aid to navigation and maritime in nature, having no other purpose or function? On the answer to that question depends the answer to the basic question raised by respondent's motion: Does the libel state a maritime tort over which the District Court has jurisdiction as a court of admiralty? Cleveland Terminal R. R. v. Steamship Co., 208 U.S. 316, at page 320, 28 S.Ct. 414, 52 L.Ed. 508, 13 Ann.Cas. 1215.

The fact that the tubes were imbedded in the channel bottom or that the control station was built on pilings, so that there was thus an "attachment to the soil" of the river bottom, would not be "a peremptory bar" to admiralty jurisdiction if "the injured thing was an instrument of navigation, and no part of the shore, but surrounded on every side by water, a mere point projecting from the sea." The Blackheath, 195 U.S. 361, at page 365, 25 S.Ct. 46, at page 47, 49 L.Ed. 236, opinion by Mr. Justice Holmes.

In commenting on the Blackheath case Chief Justice Fuller in Cleveland Terminal R. R. v. Steamship Co., supra [208 U.S. 316, 28 S.Ct. 416], stated that in the Blackheath case "The damage was to property located in navigable waters, solely an aid to navigation, and maritime in nature, and having no other purpose or function." In the Cleveland R. R. case the damage was caused by vessels adrift coming into contact with a shore dock, a bridge with a swinging span, an abutment piling and a pier. The court stated that "None of these structures were aids to navigation in the maritime sense, but extensions of the shore and aids to commerce on land as such." In The Raithmoor, 241 U.S. 166, 36 S.Ct. 514, 516, 60 L.Ed. 937, Chief Justice Hughes applied the doctrine of the Blackheath case to a claim for damages caused by a vessel colliding with an unfinished beacon, in the course of construction in navigable waters, which was "simply to serve as an aid to navigation" but not yet in use as such. In the present case the fact that the magnetic field installation had not been entirely connected and in operation at the time of the accident would not be a bar, if admiralty jurisdiction otherwise existed.

In Doullut & Co. v. United States, 268 U.S. 33, 45 S.Ct. 411, 69 L.Ed. 832, the Supreme Court held that a vessel colliding in the Mississippi River with a piling cluster, consisting of five wooden piles firmly driven in and attached to the river bottom and fastened together, which during bad weather was "used by vessels to tie up, to, so as to avoid anchor dragging and likewise to lessen the dangers of collision with other vessels whilst navigating in said river", was subject to the maritime jurisdiction of the District Court, since the damaged piles "were used exclusively as aids to navigation", citing the Blackheath and the Raithmoor cases, supra.

The above and other cases were discussed in an opinion by Judge A. N. Hand of the Circuit Court of Appeals, Second Circuit, in the case of United States of America, as owner of Cable No. 555 v. Tug John R. Williams and Great Lakes Dredge and Dock Co., 144 F.2d 451, which involved damage caused by the tug's wire rope to "a submarine telephone cable designated as No. 555 extending across the Narrows at the entrance to New York Harbor and connecting Fort Wadsworth and Fort Hamilton." The District Court had enforced a maritime lien against the tug and entered a judgment in personam against the respondent, as owner of the tug, thus following a number of District Court decisions upholding "admiralty jurisdiction with respect to damage done by vessels to submarine telephone and telegraph cables." Judge A. N. Hand pointed out the fact that the cable was connected with the shore and that there was "no evidence that the cable was to be used as an aid to navigation, even if that fact would have been sufficient to sustain admiralty jurisdiction." Judge Hand held that the facts did not sustain admiralty jurisdiction, but affirmed the judgment in personam, because respondent had not timely demanded a jury trial.

The amended libel states that "the primary purpose for which the said mag-

netic channel range had been constructed was as an aid to navigation by checking the magnetic field of vessels passing over it, thus disclosing the effectiveness with which said vessels had been degaussed, that is, protected against magnetic mines" and thus determining "whether such vessels could safely navigate in certain magnetically mined areas". In my opinion such a purpose and use would not warrant a classification of the magnetic channel range apparatus as "an aid to navigation in the maritime sense". The same is true of a certain potential use, which the amended libel ascribes to the magnetic channel range apparatus, i. e., its use "to detect the presence of submarines".

The designation of this apparatus as a magnetic channel range might suggest that one of its purposes was to mark the course of a navigable channel, to be used by vessels requiring a certain depth of water. That is not the case. As the amended libel alleges, the apparatus was located on the channel bottom, across the northerly half of the dredged channel. In having the effectiveness of their degaussing equipment checked the vessels passed over the apparatus of the magnetic channel range.

The amended libel also alleges that the apparatus in the magnetic channel range could have been used "to assist in fixing the positions of ships navigating through the channel in fog". Assuming, as we must on this motion, that such a use is practicable I do not believe that that fact would be sufficient to bring this case within the maritime jurisdiction of this Court under the decisions above cited. Those decisions allow the assumption of admiralty jurisdiction only where the injured thing was "solely" or "exclusively" an aid to navigation in the maritime sense. The possible but incidental use of the apparatus by vessels as an aid to navigation would not be sufficient, under the decisions, to confer admiralty jurisdiction. Indeed, the amended libel frankly states that the apparatus had not been used either to detect the presence of submarines or to assist vessels in fixing their position while navigating through the channel in a fog, "between the time it was repaired and put into operation and the time of its destruction by a hurricane about seven weeks later". But during said period the magnetic channel range was " * * * frequently used to check the degaussing equipment of vessels". That of course was the real purpose for which it had been constructed, and it was not as an aid to navigation in the maritime sense under the rule established by the decisions of our highest court.

My attention has been called to a decision by Judge Hulbert in The Transfer No. 3, D.C., 58 F.Supp. 422, involving a similar question of admiralty jurisdiction arising from the damage caused by a vessel to certain submarine cable of a magnetic loop in New York Harbor. Judge Hulbert held that the allegations of the libel, that the magnetic loop was constructed, installed and maintained by the libelant for harbor defense purposes in time of war and as an aid to navigation, were binding on him in deciding the motion addressed to the libel. Later it was shown to him by a letter, on a motion to reargue, that the magnetic loop in question could be used for two purposes, to check the effectiveness with which a given vessel had been degaussed, and as a submarine detecting device. There does not appear to have been any change in his original decision. The questions presented on the motion before me involve those two possible uses and also a third, the alleged availability of the magnetic channel range as an aid to vessels navigating the channel in a fog. But the latter is only an incidental use. The primary purpose for which the apparatus had been designed and installed was to test a ship's degaussing apparatus. That I hold should not be classified as "an aid to navigation in the maritime sense", under the rulings of the United States Supreme Court.

My decision in granting the motion will enable the libelant to present the question promptly to the appellate courts. Personally, I would like to see the rule broadened, so as to include a device of this kind in the class of aids to navigation in the maritime sense. But as the rule now stands and as I construe it, this court has no maritime jurisdiction of the claim presented by the amended libel herein.

The respondent's motion is accordingly granted as to item 2 thereof hereinabove quoted. Settle order on two days' notice.