BROWN & ROOT, INC., Employer, and Travelers Insurance Company, Carrier, Petitioners,

v.

Mary M. JOYNER (Widow of Arthur E. Joyner), Claimant, and Benefits Review Board, United States Department of Labor, Respondents,

and

Director, Office of Workers' Compensation Programs, United States Department of Labor, Party-in-Interest.

BROWN & ROOT, INC., Employer, and Travelers Insurance Company, Carrier, Petitioners,

v.

Benjamin F. STEWART, Claimant, and Benefits Review Board, United States Department of Labor, Respondents,

and

Director, Office of Workers' Compensation Programs, United States Department of Labor, Party-in-Interest.

Nos. 78–1554, 78–1555.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1979.

Decided Oct. 26, 1979.

---

George M. Kelley, III, Norfolk, Va. (C. Michael Montgomery, Harry E. McCoy, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), for petitioners Brown & Root, Inc. and Travelers Ins. Co.

Joshua T. Gillelan, II, U. S. Dept. of Labor, Laurie M. Streeter, Associate Sol., Washington, D. C., on brief), for respondent Director, Office of Workers' Compensation Programs.

James R. Sheeran, Richmond, Va., for respondent Stewart.

Before BUTZNER, WIDENER and HALL, Circuit Judges.

BUTZNER, Circuit Judge:

Brown & Root, Inc., and its workers' compensation insurer, Travelers Insurance Company, appeal two final orders of the Benefits Review Board awarding benefits under the Longshoremen's and Harbor Workers' Compensation Act for injuries and death arising out of the construction of a shipyard and dry dock. The two proceedings were consolidated for our review. We affirm.

I

Newport News Shipbuilding and Drydock Corporation engaged Brown & Root as an independent contractor to construct a shipyard for building and servicing liquified natural gas vessels. The project consisted of an administration building, a sub-assembly and steel fabrication building for production of component parts, a permanent dry dock for building and repair of ships, and related structures such as craneways and assembly areas. The new yard is built on filled land in an area that was formerly a shallow, navigable part of the James River. Brown & Root built a sea wall with bulkheads to enclose (part of the river. Sand was then brought up river, pumped into the enclosure, and allowed to settle. The site of the dry dock was excavated to accommodate deep draft vessels. The new yard was separated from Newport's existing yard during construction. A fence sur-

rounded the site, and a separate road provided access only for construction workers.

Arthur E. Joyner, general excavation foreman, was killed by a tractor while supervising the loading of sand at a reclaiming pit where it had settled after being pumped ashore. The sand was used to grade the yard and backfill the concrete walls of the incomplete dry dock. The reclaiming pit is now the location of the shipyard's steel fabrication building.

Stewart, a painter-sandblaster, worked all over the project. He injured his back within 100 feet of the water's edge while loading a generator and bags of sand into a truck for transport to the incomplete dry dock.

Stewart and Mary Joyner, widow of Arthur E. Joyner, initially were denied benefits by hearing examiners who concluded that neither employee was engaged in maritime employment on the navigable waters of the United States. The Benefits Review Board reversed both decisions. It held that the employees were harbor workers, an occupation which it defined as embracing "those persons directly involved in the construction, repair, alteration or maintenance of harbor facilities (which include docks, piers, wharves and adjacent areas used in the loading, unloading, repair or construction of ships) . . . ." [1]

## II

■ Under the 1972 amendments to the Act, eligibility for benefits depends on the status of the employee and the situs of his injuries. *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 265, 97 S.Ct. 2348, 2357, 53 L.Ed.2d 320 (1977). Eligible employees are those "engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuild-

er, and shipbreaker." [2] To be compensable, injuries to covered employees must occur "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building area customarily used by an employer in loading, unloading, repairing, or building a vessel)." [3]

There can be no doubt that Brown & Root was an employer as defined by 33 U.S.C. § 902(4).[4] It has a marine division whose employees worked on navigable waters. But the business of the employer, which was critical before adoption of the 1972 amendments, is no longer controlling. Because Congress extended coverage shoreward in 1972, the covered employees of a statutory employer must be "engaged in maritime employment." *See Caputo,* 432 U.S. at 264, 97 S.Ct. at 2357.

■ Stewart and Joyner were both engaged in building a dry dock. We have held, under the earlier version of the Act, that employees building and repairing dry docks are engaged in maritime employment. *Newport News Shipbuilding & Dry Dock Co. v. O'Hearne,* 192 F.2d 968 (4th Cir. 1951); *Travelers Insurance Co. v. McManigal,* 139 F.2d 949 (4th Cir., 1944); *Travelers Insurance Co. v. Branham,* 136 F.2d 873 (4th Cir. 1943). We did not base coverage on the simple proposition that the employers were engaged in maritime commerce. Instead, we examined the work of the individual claimants and concluded that it was maritime employment. In reaching this decision, we emphasized that a dry dock is peculiarly a maritime facility.

■ Brown & Root argue that decisions interpreting the Act before it was amended have lost their precedential value. We cannot accept this broad proposition. Opinions differ over whether Congress intended the 1972 amendments to exclude employees of maritime businesses who would have been

---

1. *Stewart v. Brown & Root, Inc.,* 7 BRBS 356, 365 (1978); *Joyner v. Brown & Root, Inc.,* 7 BRBS 608, 611 (1978).

2. 33 U.S.C. § 902(3).

3. 33 U.S.C. § 903(a).

4. 33 U.S.C. § 902(4) provides: "The term 'employer' means an employer any of whose employees are employed in maritime employment . . . ."

covered before 1972 because their injuries occurred on navigable waters regardless of the nature of their work. *Compare Weyerhaeuser Co. v. Gilmore*, 528 F.2d 957 (9th Cir. 1976) (excluded) *with Fusco v. Perini North River Associates*, 601 F.2d 659 (2d Cir. 1979) (included). The Supreme Court found no occasion to decide this question when dealing with longshoremen who traditionally have been considered to be engaged in maritime employment. *See Caputo*, 432 U.S. at 265 n.25, 97 S.Ct. at 2358. We, too, find it unnecessary to reach this issue, for we are confident that employment held to be traditionally maritime under the former Act has not been stripped of its maritime character by the 1972 amendments.

Therefore we conclude that both Stewart and Joyner satisfy the status test because they were engaged in maritime employment while they worked to construct the dry dock.[5]

### III

■ The Board also correctly ruled that the claimants satisfied the situs test. Both Stewart and Joyner worked on various projects on the shipyard construction site after the water was pumped out and retained by bulkheads. Previously we have held that the site of a dry dock, which was formerly navigable water and would be used against in support of navigation, remained a part of the navigable waters of the United States during construction of the dock. *See Travelers Insurance Co. v. McManigal*, 139 F.2d 949, 952 (4th Cir. 1944). Our opinion was premised in part on the concept, expressed in *The Raithmoor*, 241 U.S. 166, 175, 36 S.Ct. 514, 60 L.Ed. 937 (1916), that an aid to navigation, though under construction, is of sufficient maritime import to sustain admiralty jurisdiction. Consequently, the dry dock, though under construction, was considered a part of the navigable waters of the United States even before the amendment to 33 U.S.C. § 903(a). The 1972 amendment did not change this

interpretation of the Act. Additionally, the amendment establishes that the shipyard adjacent to the dry dock is also part of the navigable waters. Because Stewart was injured and Joyner killed while working within this area, their compensation claims satisfy the Act's situs criteria. Congress intended to avoid a fortuitous distinction in coverage based on whether injury occurred in the dry dock or in the shipyard adjacent to it. *See* S.Rep.No.92–1125, 92d Cong., 2d Sess. 13 (1972).

The Board's awards are affirmed.

---

**5.** The Benefits Review Board's definition of "harbor workers," *see* text at note 1, *supra*, includes persons who are constructing dry docks. We need not determine whether this definition conforms to congressional intent in every aspect of a harbor worker's employment. It is enough for us to note that in this instance the Board's definition is apt.